[Cite as *In re A.D.*, 2019-Ohio-1331.]

STATE OF OHIO         )              IN THE COURT OF APPEALS
                            )ss:            NINTH JUDICIAL DISTRICT
COUNTY OF SUMMIT    )

IN RE: A.D.

C.A. No.     29202

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.    DN 18-04-0321

DECISION AND JOURNAL ENTRY

Dated: April 10, 2019

HENSAL, Judge.

{¶1} Appellant, T.S. ("Mother"), appeals from a judgment of the Summit County Court of Common Pleas, Juvenile Division, that adjudicated her minor child dependent and placed the child in the temporary custody of the child's father ("Father"). This Court affirms.

I.

{¶2} Mother is the biological mother of A.D., born November 10, 2015. Summit County Children Services Board ("CSB") first became involved with Mother before A.D. was born. While pregnant with A.D., Mother was admitted to the hospital because she had attempted suicide by overdosing on acetaminophen. Mother was hospitalized and remained under close medical and psychiatric observation for the safety of herself and her unborn child. Mother told the hospital staff that she had attempted suicide because Father was not responding to her phone calls or text messages. Mother admitted that she had a history of depression and, although she had taken antidepressants in the past, she was not then taking any psychiatric medications. Upon

her release from the hospital, Mother agreed to follow up with ongoing counseling and psychiatric treatment.

{¶3} Although Mother engaged in counseling for approximately one year, she did not follow up with a psychiatric evaluation to determine whether medication would lessen her depression, anxiety, and impulsive behavior. Mother reengaged in counseling during January 2017 because she was again struggling to manage her depression and anxiety. CSB received additional referrals about Mother and A.D. during 2017, because Mother continued to struggle with depression and anxiety and lacked an adequate support system of family or friends. Ultimately, Mother agreed to a voluntary safety plan with CSB, in which she and A.D. would live with a maternal cousin ("Cousin") who would help Mother care for the child.

{¶4} At the end of March 2018, however, CSB received another referral about Mother and A.D. The maternal grandmother reported that Mother had threatened to throw A.D. in the canal near her home because she was overwhelmed with caring for the child. Mother did not take the child beyond the outside patio, apparently because the grandmother stopped her. Mother did walk outside with the child, however, and made the threat in front of the young child, while holding her by the hand.

{¶5} At a team decision meeting held on April 11, Mother agreed that she had made the threat to harm A.D. and that she was overwhelmed by caring for the child because she did not have an adequate support system. Although Mother stated that she had not actually intended to harm the child, she agreed that A.D. should be placed outside her custody while she focused on her mental health treatment. That same day, CSB filed a complaint, alleging that A.D. was a dependent child because Mother's unstable mental health posed a threat to the safety of the child.

{¶6}    Following adjudicatory and dispositional hearings before a magistrate, A.D. was adjudicated a dependent child and placed in the temporary custody of Father.  The trial court adopted the adjudication and disposition the same day.  Mother filed timely objections to the magistrate's decision, which were overruled by the trial court.  A.D. was adjudicated a dependent child and placed in the temporary custody of Father under an order of protective supervision.  Mother appeals and raises three assignments of error.

II.

ASSIGNMENT OF ERROR I

THE JUVENILE COURT COMMITTED REVERSIBLE ERROR BY FINDING THAT THE MINOR CHILD WAS DEPENDENT UNDER R.C. §2151.04(c) WITHOUT SUFFICIENT EVIDENCE.

ASSIGNMENT OF ERROR II

THE JUVENILE COURT'S FINDING THE MINOR CHILD TO BE DEPENDENT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶7}    Mother argues that the trial court's adjudication was not supported by the evidence presented at the adjudicatory hearing.  The trial court adjudicated A.D. to be a dependent child under Revised Code Section 2151.04(C), which defines a dependent child as one "[w]hose condition or environment is such as to warrant the state, in the interests of the child, in assuming the child's guardianship[.]"  The trial court concluded that A.D.'s environment warranted CSB intervention because Mother's ongoing mental health problems posed a safety risk to a child who is too young to protect herself.

{¶8}    Mother argues that the trial court's adjudication was not supported by the evidence because it focused solely on an isolated incident, during which Mother threatened to throw A.D. into the canal.  She also asserts that the child is not dependent because she was living

in a suitable home with Cousin. Mother's argument that her threat to harm the child was an isolated incident is not supported by the record. CSB first became involved with Mother before A.D. was born. While pregnant with A.D., Mother attempted suicide by ingesting a handful of acetaminophen pills, which posed a safety risk to Mother and her unborn child. Mother was hospitalized and, upon her release, she agreed to engage in ongoing mental health treatment to address her depression, anxiety, and lack of impulse control. Mother engaged in counseling for approximately one year, during which she and the therapist determined that she had successfully developed coping strategies to manage her mood and behaviors.

{¶9} Approximately five months later, Mother reengaged in counseling because she was again struggling with symptoms of depression and was not able to improve her mood with the coping strategies that she had learned. Although the specific dates and details are not clear from the record, CSB received additional referrals about Mother because she was not managing her depression and was struggling to develop a bond with A.D. Although Mother engaged in counseling throughout 2017, she continued to struggle to manage her mood or develop a positive support system.

{¶10} During November 2017, CSB received another referral after Mother had become involved in an incident of domestic violence. Mother was criminally charged, but the charges were later dismissed, and the details of the criminal case are not explained in the record. Ultimately, Mother agreed to a voluntary safety plan with CSB, in which she would continue in counseling and she and A.D. would live with Cousin, who would emotionally support Mother and help her care for the child. At that time, CSB believed that Cousin could protect A.D. from Mother's impulsive behavior.

{¶11} One night during March 2018, however, Mother left Cousin's home with A.D. and later threatened to throw her in the canal. For that reason, CSB no longer believed that Cousin could adequately protect A.D. from Mother's erratic behavior. Moreover, Mother herself admitted that she had made the threat to drown A.D., in the presence of the child. She explained that she was overwhelmed by caring for the child, despite ongoing counseling and the voluntary safety plan with CSB. Mother agreed at the team decision meeting that A.D. should be placed elsewhere because "it would just be best if [the child] wasn't around." Shortly afterward, Mother told her counselor that having her child had ruined her life because she would not be successful as a parent and could not have a career.

{¶12} Mother has failed to demonstrate that the trial court did not have ample evidence before it to demonstrate that she had a history of unstable mental health that posed an ongoing risk to her young child. Mother's first and second assignments of error are overruled.

ASSIGNMENT OF ERROR III

THE JUVENILE COURT COMMITTED REVERSIBLE ERROR BY GRANTING THE ABSENT FATHER TEMPORARY CUSTODY OF THE MINOR CHILD.

{¶13} Next, Mother argues that the trial court erred by placing A.D. in the temporary custody of Father. Given that CSB had ongoing concerns about Mother's mental health and her failure to comply with voluntary case plan requirements to ensure the safety of A.D. while in her custody, the trial court reasonably looked to an alternative disposition. Mother does not argue that another custodian would have been more appropriate, but instead focuses her argument on reasons why Father should not have received temporary custody of the child. Specifically, she points to Father's criminal record and his absence from Ohio during part of A.D.'s life.

{¶14} The evidence before the trial court was not disputed that Father had been convicted for throwing a rock or brick into the parked and unoccupied vehicle of a man with whom Mother was romantically involved. Mother repeatedly emphasized at the hearing that CSB had initially falsely informed the trial court that Father had no criminal history. Witnesses for the agency testified that CSB was aware of the conviction, that it was not an offense that disqualified Father as a suitable placement for the child, and that CSB's failure to initially disclose the conviction had been inadvertent. Father had no other criminal history, had no history with CSB, and CSB had no concerns about his mental health or his ability to provide A.D. with a suitable home.

{¶15} The evidence was also undisputed that Father had gone to Florida for approximately three months to seek employment. During that time, Father returned to Ohio twice and had contact with A.D. both times. At the time of the dispositional hearing, Father was living in this area, was employed, had the assistance of the paternal grandmother to care for A.D., and was able to meet all of A.D.'s needs. CSB had no concerns about the safety of A.D. in Father's home.

{¶16} Mother has failed to demonstrate that the trial court committed reversible error by placing A.D. in the temporary custody of Father. Her third assignment of error is overruled.

III.

{¶17} Mother's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas, Juvenile Division, is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

JENNIFER HENSAL
FOR THE COURT

CALLAHAN, P. J.
CARR, J.
CONCUR.

APPEARANCES:

JAMES W. ARMSTRONG, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN DIMARTINO, Assistant Prosecuting Attorney, for Appellee.

ERIC HARSEY, Attorney at Law, for Appellee.

JENNIFER OLDHAM, Guardian ad Litem.