[Cite as *In re A.M.*, 2019-Ohio-4244.]

| STATE OF OHIO | ) | | IN THE COURT OF APPEALS |
|---|---|---|---|
| | )ss: | | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | | |

IN RE: A.M.

C.A. No.    29200

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.    LC 13-02-45

DECISION AND JOURNAL ENTRY

Dated: October 16, 2019

---

HENSAL, Judge.

{¶1}    Appellant, A.R. ("Mother"), appeals from a judgment of the Summit County Court of Common Pleas, Juvenile Division, that denied her motion to change legal custody and continued her child in the legal custody of family friends, L.P. and B.P. ("Custodians"). This Court reverses and remands.

I.

{¶2}    Mother is the biological mother of A.M., born March 26, 2010. The child's father did not participate in the trial court proceedings and has not appealed the trial court's judgment.

{¶3}    Because Mother gave birth as a teenager and had little family to help her, A.M. began spending significant time with Custodians and another friend when the child was approximately 3 months old. When A.M. was two years old, Mother and Custodians agreed that Custodians would become A.M.'s legal guardians. At that time, Mother had no stable income or

housing and was involved in an abusive relationship with A.M.'s father.  At that point, and for the next few years, Mother and Custodians lived nearby each other in Cuyahoga Falls.

{¶4}  The parties initially agreed that the placement with Custodians would be temporary, until Mother "got back on her feet[.]"  On February 26, 2013, Custodians filed a complaint in juvenile court, seeking full legal custody of A.M.  Mother, who was not represented by counsel at that time, later agreed that A.M. would be placed in the legal custody of Custodians.  On May 22, 2013, the juvenile court placed A.M. in the legal custody of Custodians and granted Mother visitation time "as agreed by the parties."

{¶5}  Eight months later, Mother moved to modify legal custody, alleging that Custodians were not allowing her to visit A.M.  Through mediation, the parties agreed that Mother would withdraw her request for legal custody and that she would be granted parenting time with A.M. every other weekend, on Tuesdays and Thursdays from 3:30 to 8:00 p.m., and on vacations, holidays, and days of special meaning as set forth in the standard parenting time schedule.  The trial court later entered judgment pursuant to the parties' agreement.

{¶6}  One year later, when A.M. was about to start kindergarten, Custodians lost their home through foreclosure, moved to a home in Portage County, and enrolled A.M. in school there.  Mother again moved for a change of legal custody because Custodians moved to a home that was a 35-minute drive from Mother's home and, according to Mother, Custodians were not helping with transportation when Mother visited her child.  Mother also filed a motion to hold Custodians in contempt, but that motion is not at issue in this appeal.

{¶7}  At the hearing on Mother's motion to change custody, the magistrate informed the parties that she was bifurcating the hearing and would consider evidence only on the issue of whether a change in circumstances of Custodians and/or the child had occurred since the last

legal custody order. The magistrate explained that she would hear evidence regarding the best interest of the child at a later hearing, only if Mother demonstrated that there had been a change of circumstances.

{¶8} Following the initial hearing, the magistrate found that there had not been a change of substance in the circumstances of the child or Custodians and denied Mother's motion to modify legal custody. The trial court overruled Mother's objections to the magistrate's decision, agreeing that Mother had failed to demonstrate a change in circumstances, which it held was required before it could consider the best interest of the child. For that reason, the court retained A.M. in the legal custody of Custodians. Mother timely appealed that decision to this Court.

{¶9} In Mother's prior appeal, the majority decision by this Court agreed with Mother's argument that she should not have been required to prove, "as a threshold matter, * * * that there had been a change of substance in the circumstances of the child and/or the legal custodians before it would consider whether a return of custody to Mother was in the child's best interest." *In re A.M.*, 9th Dist. Summit No. 28285, 2017-Ohio-7690, ¶ 7, 17-21. This Court reversed and remanded the matter to the trial court for a hearing on A.M.'s best interest. *Id.* at ¶ 20-21, 23.

{¶10} On remand, a two-day hearing was held before a magistrate during May 2018. After considering the parties' evidence, the magistrate decided that it was in the best interest of A.M. to remain in the legal custody of Custodians. Mother filed objections, which were overruled by the trial court. The trial court continued A.M. in the legal custody of Custodians, with visitation time granted to Mother. Mother appeals and raises two assignments of error.

II.

ASSIGNMENT OF ERROR I

THE TRIAL COURT ABUSED ITS DISCRETION IN FAILING TO FIND THAT IT WAS IN THE BEST INTEREST OF [A.M.] TO BE RETURNED TO THE LEGAL CUSTODY OF HER MOTHER.

ASSIGNMENT OF ERROR II

THE TRIAL COURT'S DECISION REFUSING TO RETURN LEGAL CUSTODY OF [A.M.] TO HER MOTHER WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

**{¶11}** This Court will address Mother's two assignments of error together because they are closely related. Mother argues that the trial court abused its discretion and ignored the manifest weight of the evidence when it determined that continuing A.M. in the legal custody of Custodians, rather than returning the child to Mother's legal custody, was in the best interest of A.M.

**{¶12}** At the current juncture in this case, "after the [initial] legal custody determination is made, the best-interest-of-the-child standard should be used for any custody modification petitions filed by a natural parent." *In re A.M.*, 2017-Ohio-7690, at ¶ 19, quoting *In re Hockstock*, 98 Ohio St.3d 238, 2002-Ohio-7208, ¶ 38. A trial court's best interest determination in a legal custody case will not be reversed on appeal if the judgment is supported by a preponderance of the evidence. *In re M.F.*, 9th Dist. Lorain No. 15CA010823, 2016-Ohio-2685, ¶ 7. Our standard of review is whether the decision was against the manifest weight of the evidence presented to the trial court. *Id.*

**{¶13}** In considering whether the juvenile court's judgment is against the manifest weight of the evidence, this Court "weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the

[finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new [hearing] ordered." (Internal quotations omitted.) *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 20.

{¶14} At the hearing on remand, both Mother and Custodians attempted to paint a negative picture of each other by pointing to events that had occurred years earlier. As this Court has emphasized before, however, the best interest of a child "is a fluid concept, as it involves the child's continually-changing need for appropriate care." *In re G.L.S.*, 9th Dist. Summit No. 28874, 2018-Ohio-1606, ¶ 16. The trial court's determination of the child's best interest should focus on the current parenting ability of each proposed legal custodian and consider the evidence pertaining to the child's best interest at the time of the hearing, not past circumstances that have long since been resolved. *See id.*; *In re K.C.*, 9th Dist. Summit Nos. 26992 and 26993, 2014-Ohio-372, ¶ 20.

{¶15} The trial court recognized that both Mother and Custodians had demonstrated their current ability to provide A.M. with appropriate care in a suitable home. Consequently, it proceeded to determine which placement would *best* meet A.M.'s needs. The court considered the best interest factors set forth in Revised Code Section 3109.04(F)(1). Of relevance here, those factors included A.M.'s interaction and interrelationship with parents, family members, and significant others; her wishes and the opinions of the guardians ad litem; her adjustment to her home, school, and community; and the mental and physical health of all persons involved. R.C. 3104(F)(1)(b)-(e).

{¶16} The evidence was not disputed that A.M. had positive interaction and interrelationships with both Mother and Custodians and that she was closely bonded with all of them. On this best interest factor, the trial court appeared to place the parties on somewhat equal

footing, and even faulted Mother and the guardian ad litem for opining that it was Mother's "right" to raise her child. Although parental rights are not the focus of a best interest determination, a trial court should consider whether it is in the best interest of a child to reside with family. This Court has repeatedly recognized that "appropriate relatives should generally be given priority over nonrelatives in legal custody decisions[.]" *In re A.L.*, 9th Dist. Summit No. 28400, 2017-Ohio-7689, ¶ 24, citing *In re L.H.*, 9th Dist. Summit No. 28090, 2016-Ohio-8284, ¶ 10.

{¶17} In this case, the trial court did not expressly consider the significant fact that Mother is A.M.'s biological parent and Custodians are not related to her. Moreover, the trial court was also required to weigh A.M.'s relationship and bond with her other biological relatives who lived near Mother, including A.M.'s biological grandmother and her six-year-old aunt and eight-year-old aunt and uncle. *See id.* A.M. spends a significant amount of time with these relatives and is closely bonded with all of them. The grandmother testified that, when Mother first needed help caring for A.M., she was not able to offer much assistance because she had three young children near A.M.'s age. She explained that she has observed Mother mature significantly over the past several years and that Mother and A.M. have developed a close relationship with their extended biological family. The grandmother fully supported Mother's motion for legal custody of A.M.

{¶18} The trial court also placed significant weight on the expressed desire of then eight-year-old A.M., but discounted the recommendations of two guardians ad litem. Although the trial court conducted an in camera interview of the child, the record does not include a transcript of that interview. Consequently, this Court has no insight into why A.M. expressed a desire to stay with Custodians or why the trial court chose to accept her stated wishes instead of

the opinions of the guardians ad litem. Both guardians opined that it was in the child's best interest to return to the home of her biological mother.

{¶19} The trial court also considered that A.M. was well adjusted to her home, school, and community in Portage County. At the time of the most recent hearing, A.M. had been living in Portage County with Custodians and attending school there for two and a half years. Mother moved for a change of legal custody, however, shortly after Custodians relocated to Portage County. The prolonged time that A.M. had spent adjusting to her new environment was the result of Custodians moving, the trial court initially applying a legal standard which was later found by this Court to be incorrect, and therefore reversing and remanding the matter for a new hearing.

{¶20} Although this Court cannot undo the passage of time that A.M. has spent with Custodians in Portage County, Mother should not be penalized for her continued effort to regain legal custody of her child and successfully invoking her right to appeal the trial court's original judgment. *See In re M.B.*, 9th Dist. Summit No. 22103, 2004-Ohio-5686, ¶ 40. Before Custodians moved with A.M. to Portage County, A.M. had been well adjusted to Mother's home and Custodian's home in the same community in Summit County. Mother has remained in the same home for several years.

{¶21} The trial court also considered the mental and physical health of all persons involved. Mother points to the fact that one of the custodians has a diagnosed mental illness. The trial court considered the custodian's mental illness, but also noted that she has consistently engaged in treatment and appears to be mentally stable.

{¶22} Although the trial court noted that Mother had no mental health diagnosis or treatment, it explicitly considered some of her past behavior, which it found troubling. There

was no evidence that A.M. was exposed to any of that behavior, however; nor was there evidence that Mother was still engaged in any similar type of behavior.

{¶23} Moreover, several years ago, when Mother admittedly had difficulty caring for A.M., she acted in her child's best interest by voluntarily placing her with Custodians. Since initially placing A.M. with Custodians, Mother has matured, stabilized her life, and demonstrated an ongoing ability to appropriately care for her child and provide her with a suitable home. Custodians have allowed Mother to spend more and more unsupervised time with A.M., despite now living miles away in a different county, and admitted that Mother is now an appropriate caregiver. The evidence was not disputed that, despite the distance between the two households, Mother always exercised her opportunities to spend time with A.M.

{¶24} For these reasons, this Court must conclude that the trial court lost its way in determining that it was in the best interest of A.M. to remain in the legal custody of Custodians. Consequently, Mother's assignments of error are sustained.

III.

{¶25} Mother's assignments of error are sustained. The judgment of the Summit County Court of Common Pleas, Juvenile Division, is reversed and remanded.

Judgment reversed
and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellee.

JENNIFER HENSAL
FOR THE COURT

CALLAHAN, P. J.
SCHAFER, J.
CONCUR.

APPEARANCES:

ROBERT ROE FOX, Attorney at Law, for Appellant.

LESLIE S. GRASKE, Atorney at Law, for Appellee.