[Cite as *In re A.D.*, 2020-Ohio-4284.]

| STATE OF OHIO | ) | | IN THE COURT OF APPEALS |
| | )ss: | | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | | |

IN RE: A.D.

C.A. No.     29655

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.     DN 18 04 0321

DECISION AND JOURNAL ENTRY

Dated: September 2, 2020

HENSAL, Judge.

{¶1} Appellant, T.S. ("Mother"), appeals from a judgment of the Summit County Court of Common Pleas, Juvenile Division, that placed her minor child in the legal custody of the child's father ("Father"). This Court reverses and remands.

I.

{¶2} Mother and Father are the biological parents of A.D., born November 10, 2015. Mother has a younger child, born February 12, 2019, who is not Father's child and is not a party to this appeal. Mother's younger child is placed with a maternal cousin, J.C. ("Cousin").

{¶3} Summit County Children Services Board ("CSB") has been involved with Mother and A.D. since before the child was born. During 2015, while pregnant with A.D., Mother attempted suicide by overdosing on acetaminophen and was hospitalized in a psychiatric ward for the safety of herself and her unborn child. When Mother was released from the hospital, she pursued counseling and has continued with the same counselor since that time.

{¶4} Mother agreed to a voluntary case plan after A.D. was born, which included Mother living with Cousin, who would help Mother care for the child. During late March 2018, however, the maternal grandmother contacted CSB and reported that Mother had threatened to throw A.D. into a canal near her home because she was overwhelmed with caring for the child.

{¶5} CSB filed a complaint, alleging that A.D. was a dependent child because Mother's mental health posed a threat to the child's safety. A.D. was later adjudicated dependent and placed in the temporary custody of Father. Mother appealed and this Court affirmed both the adjudication and initial disposition. *In re A.D.*, 9th Dist. Summit No. 29202, 2019-Ohio-1331, ¶ 17.

{¶6} After this case returned to the trial court, A.D. continued in the temporary custody of Father. Later, Father and the guardian ad litem separately moved for A.D. to be placed in the legal custody of Father. Mother alternatively moved for A.D. to be placed in the temporary custody of Cousin along with Mother's younger child. CSB did not file a motion, but it expressed its support of Father's motion at the hearing.

{¶7} From the beginning of this case, Mother opposed Father having custody of A.D. She argued, among other things, that CSB had failed to consider that Father had a criminal record and that the agency did not thoroughly investigate Father's ability to care for A.D. At the dispositional hearing that is now on appeal, Mother presented evidence that A.D. remaining with Father was not in the child's best interest because Father had a criminal record, lacked stable housing, and that Mother had been in trauma-based therapy for several years because of sexual abuse by Father and other men.

{¶8} Following the hearing, the magistrate decided that A.D. should be placed in the legal custody of Father. In the decision, the magistrate explicitly stated that she did not consider certain evidence against Father, including Mother's allegations that he had sexually abused her,

and a picture of Father's minor nephew, with whom Father and A.D. were then living, brandishing a semi-automatic weapon. The magistrate did not mention other negative evidence that was presented about Father.

{¶9} Mother filed objections to the magistrate's decision, which included arguments about the magistrate's failure to consider key evidence about Father's suitability and the alleged failure of CSB and the guardian ad litem to adequately investigate him. The trial court later overruled Mother's objections to the magistrate's decision, but did not explicitly address all of Mother's evidence against Father. The trial court placed A.D. in the legal custody of Father and granted Mother supervised visitation. Mother appeals and raises three assignments of error.

## II.

### ASSIGNMENT OF ERROR I

THE TRIAL COURT'S FINDING THAT LEGAL CUSTODY TO FATHER WAS IN THE BEST INTEREST OF THE CHILD WAS AGAINST THE [MANIFEST] WEIGHT OF THE EVIDENCE.

### ASSIGNMENT OF ERROR II

THE TRIAL COURT COMMITED REVERSIBLE ERROR AND VIOLATED MOTHER'S RIGHTS TO DUE PROCESS BY IGNORING EVIDENCE OF FATHER'S SEXUAL ABUSE AGAINST the MOTHER, AND FATHER'S LACK OF INDEPENDENT SAFE AND STABLE HOUSING.

### ASSIGNMENT OF ERROR III

THE TRIAL COURT COMMITED REVERSIBLE ERROR BY FAILING TO GRANT MATERNAL COUSIN TEMPORARY CUSTODY OF THE MINOR CHILD AND REQUIRING FATHER TO HAVE INDEPENDENT SAFE [AND] STABLE HOUSING.

{¶10} This Court will address Mother's assignments of error together because they are closely related. Mother argues, among other things, that the trial court explicitly ignored evidence that was unfavorable to Father and failed to consider evidence about whether Cousin was a more suitable placement for A.D.

**{¶11}** An award of legal custody will not be reversed if the judgment is supported by a preponderance, or a greater weight, of the evidence. *In re M.F.*, 9th Dist. Lorain No. 15CA010823, 2016-Ohio-2685, ¶ 7. Our standard of review is whether a legal custody decision was against the manifest weight of the evidence. *Id.* In considering whether the juvenile court's judgment is against the manifest weight of the evidence, this Court "weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new [hearing] ordered." (Internal quotations omitted.) *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 20.

**{¶12}** Mother argues that the trial court did not weigh all the evidence because, in its best interest analysis, it ignored much of the evidence pertaining to the best interest of A.D. The trial court's judgment focused primarily on Mother's mental health and her ability to provide a suitable home for A.D., and ultimately concluded that it was not in A.D.'s best interest to be returned to Mother's custody. Mother was not seeking legal custody, however, as she recognized that she needed to continue in mental health counseling to stabilize her life.

**{¶13}** Mother's competing dispositional motion requested that A.D. be placed in the temporary custody of Cousin, who was granted temporary custody of A.D.'s younger sibling by agreement of all parties. There was no evidence that Cousin had a criminal record or any instability in her life. All parties agreed that Cousin was a suitable caregiver for A.D. and that A.D. had been spending a considerable amount of time with her. The parties and trial court also agreed that Cousin was a suitable person to supervise visits between Mother and A.D. The trial court's judgment did not address whether it was in the best interest of A.D. to be placed with Cousin.

{¶14} Moreover, the trial court did not address any of the negative evidence about Father. Mother presented evidence that Father had sexually abused her in the past and that was why she had attempted suicide and why she had been in trauma-based therapy for years. Mother's initial mental health assessment did not reveal that Mother had been an abuse victim, as it did not involve a review of Mother's prior counseling records. Two months before the hearing, Mother obtained another mental health assessment, which diagnosed Mother with post-traumatic stress disorder because of the abuse that she had suffered in the past. All parties agreed that the more recent assessment had been more thorough and was performed by a more qualified professional. The case plan was amended to reflect Mother's diagnosis and treatment for PTSD. Thereafter, the trial court disregarded much of the evidence and argument presented or attempted to be presented regarding Father's actions as unsupported and in some instances unreliable hearsay.

{¶15} Although the parties and trial court accepted the validity of Mother's recent mental health diagnosis, they did not consider the content of the evaluator's report, including the records that had contributed to the diagnosis. Mother had been hospitalized during 2015 while pregnant with A.D. and her hospital records indicate that she refused to disclose why she had attempted suicide. Her counseling records following her hospital release, and the testimony of her counselor, reveal that Mother later disclosed that Father had sexually abused her and that she was in therapy to address that abuse. From the record before us, it appears that CSB conducted no investigation into Mother's allegations of abuse, nor was Father required to undergo a mental health assessment. Instead, it appears that Mother's allegations of abuse by Father were disregarded by CSB and the guardian ad litem. The record fails to indicate why this occurred. Assuredly, Mother was uncooperative with the caseworker and the guardian ad litem, which caused significant difficulties for them in assessing these allegations. However, after finding that Mother's diagnosis of PTSD

was reliable, the trial court then accepted the guardian ad litem's conclusion that Father was mentally and emotionally stable, even though he had not been evaluated by a qualified professional.

{¶16} Moreover, the trial court did not consider Mother's evidence that was based on undisputed facts. Shortly before this case began, Father was convicted for throwing a brick through the windshield of Mother's boyfriend's car. Father had moved and changed jobs numerous times during the past few months. At one point, he and A.D. were living in the home of relatives, including his teenaged brother, who posted a picture on social media of himself holding a semi-automatic rifle. After seeing the picture of Father's brother and the gun, the guardian ad litem advised Father to move somewhere else, which he did. No one disputed these facts, but they were dismissed as unimportant by CSB and the guardian ad litem. These facts were not addressed by the trial court.

{¶17} The relevant issue at the hearing was whether Father or Cousin was the more suitable placement for A.D. Because the trial court failed to consider all the relevant evidence pertaining to the best interest of A.D., Mother's assignments of error are sustained.

III.

{¶18} Because the trial court failed to fully consider much of the relevant evidence about the best interest of A.D., Mother's assignments of error are sustained. The judgment of the Summit County Court of Common Pleas, Juvenile Division, is reversed and the cause is remanded for further proceedings consistent with this opinion.

Judgment reversed,
and cause remanded.

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellee.

_____
JENNIFER HENSAL
FOR THE COURT

CARR, P. J.
SCHAFER, J.
CONCUR.

APPEARANCES:

JAMES W. ARMSTRONG, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN R. DIMARTINO, Assistant Prosecuting Attorney, for Appellee.

ERIC HARSEY, Attorney at Law, for Appellee.

JOSEPH KERNAN, Guardian ad Litem.