[Cite as *In re A.D.*, 2022-Ohio-777.]

| STATE OF OHIO | ) | | IN THE COURT OF APPEALS |
|---|---|---|---|
| | )ss: | | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | | |

IN RE: A.D.

C.A. No.     29976

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.     DN 18 04 0321

DECISION AND JOURNAL ENTRY

Dated: March 16, 2022

HENSAL, Presiding Judge.

{¶1}     Appellant, T.S. ("Mother"), appeals from a judgment of the Summit County Court of Common Pleas, Juvenile Division, that placed one of her minor children in the legal custody of J.D. ("Father").  This Court affirms.

I.

{¶2}     Mother and Father are the biological parents of A.D., born November 10, 2015. Mother and Father both have other children who are not parties to this appeal.

{¶3}     Summit County Children Services Board ("CSB") first became involved with Mother while she was pregnant with A.D. because Mother had attempted suicide and was hospitalized in a psychiatric ward.  After A.D. was born, Mother agreed with CSB to comply with a voluntary safety plan.  The terms of the safety plan included Mother living with a maternal cousin ("Cousin"), who had raised Mother after she was removed from the biological grandmother's custody as an infant.

{¶4} During March 2018, CSB filed a complaint to begin an involuntary case after Mother allegedly threatened to throw A.D. into a canal because she was overwhelmed with caring for her. A.D. was later adjudicated a dependent child and placed in the temporary custody of Father. This Court affirmed the adjudication and initial disposition. *In re A.D.*, 9th Dist. Summit 29202, 2019-Ohio-1331, ¶ 17.

{¶5} Father and the guardian ad item later moved to have A.D. placed in the legal custody of Father. CSB did not file a motion but expressed its support of Father's motion. Mother alternatively moved to have A.D. placed in the legal custody of Cousin, who also had temporary custody of Mother's younger child, born February 12, 2019.

{¶6} The trial court ultimately placed A.D. in the legal custody of Father. On appeal from the initial legal custody judgment, this Court reversed the judgment and remanded the case to the trial court because the record did not demonstrate that the trial court had considered all the evidence before it pertaining to the best interest of the child. *In re A.D.*, 9th Dist. Summit No. 29655, 2020-Ohio-4284, ¶ 18. Specifically, this Court noted that the trial court did not fully consider the viability of placing the child with Cousin or that Father had potential problems that CSB had failed to investigate, including allegations and proof of criminal behavior by Father. *Id*. at ¶ 15-16. This Court expressed particular concern that the guardian ad litem opined that Father was mentally and emotionally stable, yet he had not been evaluated by a qualified mental health professional. *Id*. at ¶ 15.

{¶7} On remand, CSB amended the case plan to require more services for Father. Father obtained a mental health and substance abuse assessment and engaged in services. CSB also investigated Mother's allegations that Father had sexually abused her but found no proof of abuse. On January 19, 2021, CSB moved to have A.D. placed in the legal custody of Father. The trial

court held a final dispositional hearing, at which it also considered alternative motions to place A.D. in the legal custody of Mother or Cousin. Following the hearing, the trial court placed A.D. in the legal custody of Father. Mother appeals and raises three assignments of error, which will be addressed together because they are interrelated.

## II.

### ASSIGNMENT OF ERROR I

THE TRIAL COURT'S GRANTING OF LEGAL CUSTODY TO A FATHER WHO HAD STRUCK MULTIPLE TIMES HIS FIVE[-] YEAR[-]OLD FEMALE CHILD WITH A BELT WHILE DELAYING NEEDED MEDICAL CARE, WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND NOT IN THE CHILD'S BEST INTEREST.

### ASSIGNMENT OF ERROR II

THE TRIAL COURT COMMITTED REVERSIBLE ERROR AND VIOLATED MOTHER'S RIGHTS TO DUE PROCESS BY FAILING TO REUNIFY THE MINOR CHILD WITH HER MOTHER AFTER MOTHER HAD SUCCESSFULLY COMPLETED THE CASE PLAN AND THE REASONS FOR THE REMOVAL HAD LONG SINCE BEEN RESOLVED WHILE FATHER HAD FAILED TO COMPLETE HIS CASE PLAN.

### ASSIGNMENT OF ERROR III

THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY FAILING TO GRANT MATERNAL COUSIN LEGAL CUSTODY OF THE CHILD.

{¶8} Mother's first and third assignments of error challenge whether the trial court's decision to place A.D. in the legal custody of Father, rather than in the legal custody of Mother or Cousin, was against the manifest weight of the evidence. At the final dispositional hearing, the trial court considered motions for legal custody to three alternative legal custodians: Father, Mother, and Cousin. Mother's support of Cousin's motion was contingent upon the trial court finding that neither parent should be granted legal custody. When Cousin testified, Mother's counsel directly asked her whether she would be "willing to take care" of A.D. "[i]f the court decides that neither [Mother] nor [Father] should" be granted legal custody.

{¶9} On appeal, Mother makes only a two-paragraph argument that Cousin should have been granted legal custody of A.D. Notably, she does not challenge any of the trial court's best interest findings stated in support of its conclusion that A.D. should not be placed in the legal custody of Cousin. Consequently, this Court will confine its review to whether the trial court's decision to place A.D. in the legal custody of Father, rather than Mother, was against the manifest weight of the evidence.

{¶10} An award of legal custody must be supported by a preponderance of the evidence. "Preponderance of the evidence entails the greater weight of the evidence, evidence that is more probable, persuasive, and possesses greater probative value." (Internal quotations omitted.) *In re M.F.*, 9th Dist. Lorain No. 15CA010823, 2016-Ohio-2685, ¶ 7. In considering whether the juvenile court's judgment is against the manifest weight of the evidence, this Court "weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new [hearing] ordered." (Internal citations and quotations omitted.) *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 20. When weighing the evidence, this Court "must always be mindful of the presumption in favor of the finder of fact." *Id*. at ¶ 21.

{¶11} "Following an adjudication of neglect, dependency, or abuse, the juvenile court's determination of whether to place a child in the legal custody of a parent or a relative is based solely on the best interest of the child." *In re K.H.*, 9th Dist. Summit No. 27952, 2016-Ohio-1330, ¶ 12. Throughout her second assignment of error, Mother focuses on evidence about the progress that she had made on the reunification goals of the case plan. She specifically points to evidence that the psychologist who evaluated her mental health in early 2019, had more recently reassessed

her and determined that Mother had stabilized her mental health through counseling and no longer needed mental health treatment. Mother implies that, because she had resolved the problems that brought A.D. into agency custody, she was entitled to regain custody of her child. This Court has repeatedly held, however, that a parent's case plan compliance may be relevant to the child's best interest, but it is not determinative. *See, e.g., In re L.P.*, 9th Dist. Summit No. 29963, 2021-Ohio-3183, ¶ 25; *In re S.S.*, 9th Dist. Summit Nos. 29511 and 29514, 2020-Ohio-1354, ¶ 15.

{¶12} This Court recognizes that Mother's fundamental right to raise her child is at issue but must emphasize that the trial court's judgment granting legal custody to Father was not akin to a termination of Mother's parental rights. *In re A.L.*, 9th Dist. Summit No. 28400, 2017-Ohio-7689, ¶ 18. The juvenile court's disposition of legal custody "is a less drastic disposition than permanent custody" because Mother retains her "residual parental rights, privileges, and responsibilities." *Id.*; R.C. 2151.011(B)(21). Those rights include, "but [are] not necessarily limited to, the privilege of reasonable visitation, consent to adoption, the privilege to determine the child's religious affiliation, and the responsibility for support." R.C. 2151.011(B)(50).

{¶13} The statutory scheme regarding an award of legal custody does not include a specific test or set of criteria, but Ohio courts agree that the juvenile court must base its decision to award legal custody on the best interest of the child. *In re B.B.*, 9th Dist. Lorain No. 15CA010880, 2016-Ohio-7994, ¶ 18, quoting *In re N.P.*, 9th Dist. Summit No. 21707, 2004-Ohio-110, ¶ 23. The juvenile court is guided by the best interest factors enumerated in R.C. 2151.414(D) relating to permanent custody. *In re B.G.*, 9th Dist. Summit No. 24187, 2008-Ohio-5003, ¶ 9, citing *In re T.A.*, 9th Dist. Summit No. 22954, 2006-Ohio-4468, ¶ 17. Those factors include the interaction and interrelationships of the child, the child's wishes, the custodial history of the child,

and the child's need for permanence.  R.C. 2151.414(D)(1)(a)-(e)[1]; *see also In re B.C.*, 9th Dist. Summit Nos. 26976 and 26977, 2014-Ohio-2748, ¶ 16.

{¶14}  The juvenile court may also consider the best interest factors in R.C. 3109.04(F)(1). *In re K.A.*, 9th Dist. Lorain Nos. 15CA010850 and 15CA010860, 2017-Ohio-1, ¶ 17.  While many factors overlap with those set forth in R.C. 2151.414(D)(1), a separate factor relevant here is the proposed custodian's likelihood to honor and facilitate visitation or parenting time.  R.C. 3109.04(F)(1)(f).

{¶15}  At the legal custody hearing on remand, and again on appeal, Mother has focused part of her argument on events involving Father that occurred years ago.  The purpose of a hearing on competing legal custody motions is not to relitigate circumstances that predated the adjudication of the child.  *See*, *e.g*., *In re A.M.*, 9th Dist. Summit No. 29200, 2019-Ohio-4244, ¶ 14; *In re K.C.*, 9th Dist. Summit Nos. 26992 and 26993, 2014-Ohio-372, ¶ 20.  "Instead, the primary focus at the legal custody hearing was on the current parenting ability of each potential custodian and whether it was in the best interest of the child[] to be permanently placed in the legal custody of any of them." *In re K.C.* at ¶ 20.

{¶16}  The trial court's analysis of the evidence on each of the best interest factors supported its decision to place A.D. in the legal custody of Father.  Beginning with the child's interaction and interrelationships, A.D.'s interaction with Mother throughout this case was limited to supervised visitation because Mother continued to exhibit mental health or behavioral problems.  CSB was also concerned that Mother was involved with a man who is a convicted sex offender

---

[1] R.C. 2151.414(D)(1)(e) also requires the trial court to consider whether any of the factors set forth in R.C. 2151.414(E)(7)-(11) apply to this case, but none of those factors are relevant here.

and had been violent with her. Mother admitted that she continued to interact with that man because he is the father of her two youngest children.

{¶17} Shortly after the prior legal custody judgment, Mother's behavior during two separate incidents on January 3 and 7, 2020, caused the guardian ad litem to question her emotional stability. The first incident involved an altercation between Mother and the police when police came to her home to do a welfare check. A friend had called the police to report that she had just spoken to Mother on the phone and was concerned that Mother was again suicidal. According to the police report and later testimony of the police, Mother was combative, attempted to bite one of the officers, and it took several officers to restrain her. Although EMS personnel spoke to Mother at the scene and determined that she was not suicidal, the guardian ad litem expressed concern about Mother's violent reaction to the police coming to her home.

{¶18} Four days later, Mother was involved in a traffic collision with another vehicle and allegedly fled the scene in her vehicle. According to the driver of the other vehicle, he pursued mother and, after he was able to catch up to her, Mother exited her vehicle and smashed the headlight of his vehicle with a crowbar. Police responded to the scene. Mother admitted causing the collision but denied using a crowbar to hit the vehicle.

{¶19} Two days later, the guardian ad litem filed an ex parte motion to immediately suspend Mother's visitation with A.D. She supported the motion with the police reports from both incidents. The magistrate granted the motion and informed Mother that same day that, based on the strength of the police reports, Mother's visits would be suspended pending a hearing. Following a hearing, the magistrate ordered that Mother's supervised visits with A.D. would resume at the visitation center, where CSB could intervene if Mother exhibited inappropriate behavior. The magistrate's order further stated, however, that Mother was not then engaged in

mental health counseling but that the parties "agreed that mother is now seeking treatment from a new provider who has previously evaluated her."

{¶20} By the time of the legal custody hearing more than one year later, however, Mother had not been engaged in counseling for the past 18 months and there was no evidence presented that she was planning to reengage in counseling. Instead, Mother relied on the testimony of the psychologist who reevaluated her in October and November 2019, prior to the incidents, that Mother no longer had a mental health diagnosis that required counseling. Several other witnesses testified that, even if Mother no longer had a mental health diagnosis, her behavior during the two incidents in January 2020 caused them to question Mother's ability to care for A.D. without supervision. Mother's visits with A.D. remained supervised throughout this case.

{¶21} A.D. interacted with Father every day, without supervision, because she had been living in his home for almost three years. The caseworker and the guardian ad litem testified that A.D. was comfortable in Father's home and had become attached to Father's girlfriend and their daughter (A.D.'s younger half-sibling) who also lived there. The caseworker testified that all of A.D.'s needs were being met and that Father had been providing her with appropriate and loving care. Cousin also told the caseworker that she thought Father was doing a good job caring for A.D. The caseworker and Father's counselor both testified that they had no concerns about Father's ability to care for A.D.

{¶22} Mother points to one incident during the three years that A.D. had been living with Father to support her argument that Father did not provide appropriate care for the child. Shortly before Christmas of 2020, while A.D. was apparently alone in her bedroom, she moved her dresser and was able to gain access to the wall outlet with a cord connected to Christmas lights that were illuminated on the ceiling. A.D. bit into the cord and sustained second degree burns to her lip.

Mother blamed Father for the child being hurt and further faulted him for his reaction to the situation. Father initially responded to the incident by spanking the child with a belt and did not take her to the hospital until after she napped that day.

{¶23} Although witnesses testified that they did not necessarily agree with Father's decision to spank the child, it was not disputed that A.D. sustained no injuries or marks from Father using the belt. The caseworker testified she was not particularly concerned about this one incident because Father had not impulsively reacted out of anger but had made a rational decision to discipline the child. A.D. had not harmed herself through an unpreventable accident. She burned herself because she moved her dresser and bit into an electrical cord, and Father explained that he wanted her to learn that she should never play with an electrical cord again.

{¶24} Father testified that he did not immediately take the child to the hospital because he did not observe any swelling on her lip until after she got up from her nap. Father took A.D. to the hospital for treatment immediately after he saw the swelling and ensured that she had follow-up care, including a minor cosmetic surgery to remove burned skin from her lip. At the time of the hearing the following month, A.D.'s lip was fully healed. Moreover, immediately after the incident, Father removed the lights from the child's room and covered the electrical outlets with childproof covers. Given the totality of the circumstances surrounding the incident, and Father's history of providing A.D. with appropriate care throughout this case, the caseworker testified that CSB was not concerned about Father's ability to provide A.D. with a suitable home.

{¶25} Mother also points to evidence that Father tested positive for marijuana shortly before the hearing. The caseworker explained that she spoke to Father about the positive test and expressed her disappointment to him, as he was in counseling to address his marijuana use that had been in sustained remission. She believed Father when he told her that he knew that he had

made a bad choice and did not use marijuana in the presence of A.D. Father's use of marijuana did not change the agency's position that Father would continue to provide A.D. with a suitable home.

{¶26} A.D., who was five years old at the time of the hearing, was not mature enough to express her own wishes. The guardian ad litem expressed her opinion that legal custody to Father was in the best interest of A.D. because the child had been doing well there for three years and she had no concerns about Father's ability to meet A.D.'s needs on a regular basis. She further testified that, although she believed that Mother loved A.D. and generally interacted well with her, Mother's reactive behavior continued to concern her.

{¶27} The guardian ad litem also expressed concern that Mother continued to have a relationship with the father of her other children. The evidence was not disputed that the father of the other children is a convicted sex offender and had also been violent with Mother on multiple occasions.

{¶28} By the time the hearing concluded, this case had been pending for three years. A.D. had lived in the temporary custody of Father throughout that time and needed a legally secure permanent placement. The trial court reasonably concluded that a legally secure permanent placement for A.D. would be achieved by placing her in the legal custody of Father.

{¶29} Finally, the trial court considered the evidence pertaining to whether Father or Mother would be more likely to honor and facilitate the other parent's right to visit A.D. The caseworker and the guardian ad litem both believed that Father was more likely to honor and facilitate visitation with A.D. Throughout the past three years, Father had facilitated Mother's visitation with A.D. either in person or over the phone. He testified at the hearing that he would continue to honor Mother's visitation rights and wanted to successfully co-parent A.D. with her.

He expressed his hope that he and Mother could put their differences aside and do what was best for A.D.

{¶30} Mother did not work with Father to parent A.D. during this case or in the past. The caseworker expressed doubt that Mother would facilitate Father's visitation rights if she were granted legal custody, because Mother refused to speak to Father. Mother and Father ended their relationship shortly after A.D. was born. When Mother had custody of A.D. prior to this case, she did not facilitate a relationship or contact between Father and A.D.

{¶31} Consequently, the evidence before the trial court supported its decision that legal custody to Father was in the child's best interest. Because Mother has failed to demonstrate that the trial court lost it way by placing A.D. in the legal custody of Father, her assignments of error are overruled.

## III.

{¶32} Mother's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas, Juvenile Division, is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period

for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

_____
JENNIFER HENSAL
FOR THE COURT

CARR, J.
CALLAHAN, J.
CONCUR.

APPEARANCES:

JAMES W. ARMSTRONG, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN R. DIMARTINO, Assistant Prosecuting Attorney, for Appellee.

SHUBHRA AGARWAL, Attorney at Law, for Appellee.

JOSEPH KERNAN, Guardian ad Litem