[Cite as *In re S.S.*, 2020-Ohio-1354.]

STATE OF OHIO      )          IN THE COURT OF APPEALS
                    )ss:       NINTH JUDICIAL DISTRICT
COUNTY OF SUMMIT     )

| | |
|---|---|
| IN RE: S.S.<br>       K.S.<br>       A.S.<br>       C.S.<br>       H.T.<br>       G.T. | C.A. Nos.     29511<br>                 29514<br><br><br>APPEAL FROM JUDGMENT<br>ENTERED IN THE<br>COURT OF COMMON PLEAS<br>COUNTY OF SUMMIT, OHIO<br>CASE Nos.    DN 16 08 0668<br>                  DN 16 08 0669<br>                  DN 16 08 0670<br>                  DN 16 08 0671<br>                  DN 16 08 0672<br>                  DN 16 08 0673 |

## DECISION AND JOURNAL ENTRY

Dated: April 8, 2020

---

CALLAHAN, Presiding Judge.

**{¶1}** Appellants, A.T. ("Mother") and T.T. ("Father T."), appeal from a judgment of the Summit County Court of Common Pleas, Juvenile Division, that terminated parental rights and placed six minor children in the permanent custody of Summit County Children Services Board ("CSB"). This Court affirms.

I.

**{¶2}** Mother is the biological mother of the six minor children who are parties to this appeal: S.S., born May 5, 2004; K.S., born October 29, 2005; C.S., born November 23, 2007; A.S., born July 29, 2009; H.T., born August 14, 2012; and G.T., born July 28, 2013. Father T. is the father of only H.T. and G.T.

{¶3}     Mother's oldest child, E.S., was ultimately placed in the legal custody of her father ("Father S.") and is not a party to this appeal.  Although Father S. is also the father of four of Mother's other children, he did not pursue legal custody of those children and did not appeal from the trial court's judgment.

{¶4}     On August 10, 2016, CSB filed complaints, alleging that the children were neglected and dependent because then three-year-old G.T. had been found alone and naked outside by a neighbor who was unable to reach anyone inside the home.  Police also found the condition of the home to be deplorable.  Although the children initially were returned to the home under an order of protective supervision, they were later removed from the home because Mother and Father T. did not improve the condition of the home and were not adequately meeting the children's needs.  According to the older children, Mother and Father T. often stayed in bed and left the children to fend for themselves.  The older children necessarily became caretakers for their younger siblings.

{¶5}     On October 19, 2016, the children were adjudicated neglected and dependent.  They were later placed in the temporary custody of CSB.  Mother and Father T. participated in counseling and other services throughout this case, but they did not develop insight into why the children were removed from the home.  Numerous witnesses testified that neither parent made much progress in learning how to appropriately supervise and set boundaries for their children. Mother resisted suggestions made by the caseworkers or her service providers because she did not believe that she needed services.  Father T., on the other hand, continued to have strong feelings of worthlessness and did not believe that anything he did would make a difference.

{¶6}     During this lengthy case, CSB worked toward transitioning the children back into the home.  The parents were permitted to have extended, unsupervised visits in their home at the

beginning of 2017. During April 2017, however, H.T. alleged that during one of the visits, S.S. had inserted a toothbrush into her vagina. Home visits were suspended, and the parents' visits were again supervised at the visitation center. Although the allegations were not substantiated, several witnesses expressed concern that H.T. had begun exhibiting numerous mental health and behavioral problems, but Mother would not acknowledge or discuss her child's problems. Five of the children suffered from significant mental health and behavioral problems, but the parents minimized those problems and failed to become involved in the children's counseling despite continual encouragement that they do so.

{¶7}   CSB again permitted some of the children to have unsupervised visits in the home by early 2018. During one extended visit, Mother attended a school event during which the school resource officer believed that she was under the influence of drugs or alcohol. The school contacted CSB and Mother later tested positive for drugs. Although Mother showed the caseworker that she had a prescription for Adderall, the caseworker was aware that C.S. was prescribed the same medication. The caseworker counted the pills in each prescription and discovered that several pills were missing from each bottle. At that time, Mother gave no explanation for the missing pills.

{¶8}   On June 28, 2018, CSB moved for permanent custody of these six children. Following an evidentiary hearing, the trial court terminated parental rights and placed the children in the permanent custody of CSB. Mother and Father T. appeal, each raising two assignments of error. This Court will consolidate their assigned errors because they raise the same issues.

II.

FATHER T.'S ASSIGNMENT OF ERROR I
MOTHER'S ASSIGNMENT OF ERROR I

THE TRIAL COURT COMMITTED REVERSIBLE AND PLAIN ERROR IN GRANTING PERMANENT CUSTODY UNDER R.C. 2151.414(B)(1)(D) WHEN [CSB] HAS NOT HAD AGENCY INVOLVEMENT WITH [THE CHILDREN] FOR AT LEAST TWENTY-TWO CONSECUTIVE MONTHS.

{¶9} Through their first assignments of error, Father T. and Mother challenge the trial court's finding under the "12 of 22" prong of the permanent custody test. R.C. 2151.414(B)(1)(d) provides that an agency establishes the first prong of the permanent custody test if it proves that each "child has been in the temporary custody of one or more public children services agencies * * * for twelve or more months of a consecutive twenty-two-month period[.]"

{¶10} The parents make a legal argument, that this Court has previously rejected, that the "12 of 22" provision is satisfied only if each child has been in temporary custody of a children services agency for at least 12 months of a consecutive 22-month period *of agency involvement*. This Court explicitly rejected their legal interpretation of the language of R.C. 2151.414(B)(1)(d) in *In re J.C.*, 9th Dist. Summit No. 28865, 2018-Ohio-2555, ¶ 10-13 and, more recently, in *In re K.H.*, 9th Dist. Summit No. 29555, 2020-Ohio-776, ¶ 6-8. This legal issue is also currently pending before the Ohio Supreme Court on a certified conflict in *In re N.M.P.*, Supreme Court Case No. 2018-1842.

{¶11} Moreover, even if this Court were to accept their interpretation of R.C. 2151.414(B)(1)(d), they have failed to demonstrate any potential error under the undisputed facts of this case. As in *In re K.H.*, the facts of this case involved an extensive period of CSB involvement with this family. At the time CSB moved for permanent

custody on June 28, 2018, these children had been in its temporary custody for more than 20 months and CSB had been formally involved with the family for more than 22 consecutive months since it filed its complaint on August 8, 2016. Because these children were in the temporary custody of CSB for more than 12 months of a consecutive period of 22-months of agency involvement, the premise of the parents' legal argument is not supported by the facts of this case. The parents' first assignments of error are overruled.

FATHER T.'S ASSIGNMENT OF ERROR II
MOTHER'S ASSIGNMENT OF ERROR II

THE TRIAL COURT COMMITTED REVERSIBLE ERROR AND PLAIN ERROR IN PLACING [THE CHILDREN] IN THE PERMANENT CUSTODY OF CSB AS THE DECISION WAS NOT SUPPORTED BY CLEAR AND CONVINCING EVIDENCE AND WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶12} The parents' second assignments of error challenge the weight of the evidence supporting the trial court's decision. In considering whether the juvenile court's judgment is against the manifest weight of the evidence, this Court "weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new [hearing] ordered." (Internal quotations and citations omitted.) *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 20. When weighing the evidence, this Court "must always be mindful of the presumption in favor of the finder of fact." *Id*. at ¶ 21.

{¶13} Before a juvenile court may terminate parental rights and award permanent custody of a child to a proper moving agency it must find clear and convincing evidence of both prongs of the permanent custody test: (1) that the child is abandoned; orphaned; has been in the temporary custody of the agency for at least 12 months of a consecutive 22-month period; the child or another

child in a parent's custody has been adjudicated abused, neglected, or dependent on three separate occasions; or the child cannot be placed with either parent within a reasonable time or should not be placed with either parent, based on an analysis under R.C. 2151.414(E); and (2) that the grant of permanent custody to the agency is in the best interest of the child, based on an analysis under R.C. 2151.414(D). *See* R.C. 2151.414(B)(1) and 2151.414(B)(2); *see also In re William S.*, 75 Ohio St.3d 95, 99 (1996).

{¶14} The trial court found that the first prong of the permanent custody test was satisfied because the children had been in the temporary custody of CSB for at least 12 months of a consecutive 22-month period. *See* R.C. 2151.414(B)(1)(d). As explained in this Court's disposition of the parents' first assignments of error, that finding was fully supported by the evidence in the record.

{¶15} Next, the trial court found that permanent custody was in the best interest of the children. The parents argue that they complied with the requirements of the case plan and, therefore, demonstrated that they were prepared to be reunited with their children. Although case plan compliance may be relevant to the trial court's best interest determination, it is not dispositive of the issue. *See, e.g.*, *In re J.W.*, 9th Dist. Summit No. 28976, 2019-Ohio-210, ¶ 15; *In re F.W.*, 9th Dist. Summit Nos. 28520 and 28529, 2017-Ohio-5624, ¶ 23. No one disputed that the parents had significantly improved the condition of their home and that they had been working with service providers to comply with the requirements of the case plan. Nevertheless, despite working with counselors for two years, neither parent had developed insight into their parenting problems, nor were they able to demonstrate that they could meet the needs of their children.

{¶16} When determining the children's best interest under R.C. 2151.414(D), the juvenile court must consider all relevant factors, including the interaction and interrelationships of the

children, the children's wishes, the custodial history of the children, the need for permanence in their lives, and whether any of the factors set forth in R.C. 2151.414(E)(7) to (11) apply to the facts of the case. R.C. 2151.414(D)(1); *In re R.G.,* 9th Dist. Summit Nos. 24834 and 24850, 2009-Ohio-6284, ¶ 11. None of the factors in R.C. 2151.414(E)(7) to (11) apply to the facts of the case.

{¶17} The interaction between the children and these parents did not improve during this two-year case. Several witnesses who observed the supervised visits gave similar testimony about the parents' lack of interaction with the children. Mother and Father T. always attended visits and came prepared with food and activities for the children, but they did not actively participate in activities with the children. Father T. interacted only with his biological children and, even with his two children, his interaction was minimal. As one witness observed, he did not pay attention to any of the children.

{¶18} Mother was described by witnesses as being more focused on setting out activities and food for the children than in interacting with them. According to one of the caseworkers, Mother was "more of an observer and not a participant." Moreover, as had been the problem throughout this case, Mother did not supervise the children during visits or enforce rules and give consequences for their misbehavior.

{¶19} After two failed attempts of expanded visits in the home, Mother continued to deny that she had done anything wrong. She insisted that the alleged incident with the toothbrush could not have happened because S.S. and H.T. were never left alone. Mother would not discuss the allegation further and would not acknowledge that H.T. needed treatment. Witnesses expressed concern that despite whether H.T. had fabricated the incident or it had happened, H.T. had a problem that needed to be addressed. H.T. had begun eating the plaster from the walls in the foster home and was pulling out her hair. H.T.'s allegation was not substantiated, but it also was not

disproven. H.T.'s counselor was concerned that a five-year-old child was able to describe the alleged incident in detail including the pain that she experienced. Moreover, although S.S. denied that the incident with H.T. had happened, she had recently made vague disclosures to her foster parents and counselor about sexual contact with three of her other siblings that had occurred several years earlier.

{¶20} Mother also denied that she had been abusing the Adderall prescribed to her and/or C.S., yet she refused to continue taking drug tests as required by the case plan. At the time the drug incident arose, Mother offered no explanation for the missing pills. At the time of the hearing, however, Mother attempted to contradict the testimony of caseworkers, service providers, and other CSB witnesses, suggesting that they had all lied on the witness stand. Throughout this case, according to one counselor, Mother viewed herself as a victim and believed that CSB and everyone else was out to get her.

{¶21} The children's wishes in this case were intertwined with their mental health problems. All the children except A.S. suffered from behavioral and mental health problems and were engaged in counseling at the time of the hearing. S.S.'s counselor testified that the child suffered from PTSD and was very angry at Mother, but S.S. had not yet disclosed details about her past trauma or why she was angry at Mother. S.S. did not want to return home or even visit with Mother.

{¶22} K.S. had also expressed that he did not want to go home. K.S. said that he did not want to go home because he would be one of the older children and would have to do everything for the younger children. C.S. and A.S. wanted to go home, but several witnesses had explained that the children were fiercely loyal to Mother and were reluctant to say anything that might upset her. C.S. also told the guardian ad litem that she wanted to go home because there are no rules

there and she does not like rules. The wishes of the two youngest children were not expressed by the children themselves.

{¶23} The guardian ad litem testified that permanent custody was in the best interest of all six children. She expressed concern that, despite two years of counseling, both parents lacked insight into how their lack of supervision and boundaries had negatively affected their children. Mother had not accepted any responsibility for her family's situation and did not believe that she needed services to improve her parenting skills.

{¶24} These six children had lived in multiple temporary placements for more than two years and needed a legally secure permanent placement. The parents were not prepared to provide them with a safe and stable home and CSB had been unable to find any suitable relatives who were willing and able to do so. Consequently, the trial court reasonably concluded that permanent custody was in the best interest of all six children. The parents' second assignments of error are overruled.

III.

{¶25} The parents' assignments of error are overruled. The judgment of the Summit County Court of Common Pleas, Juvenile Division, is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellants.

_____
LYNNE S. CALLAHAN
FOR THE COURT

CARR, J.
SCHAFER, J.
CONCUR.

APPEARANCES:

SHUBHRA N. AGARWAL, Attorney at Law, for Appellant.

RONALD T. GATTS, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN R. DIMARTINO, Assistant Prosecuting Attorney, for Appellee.

ANGELINA GINGO, Attorney at Law, for the minor children.

MICHELLE TOMER, Guardian ad Litem.