[Cite as *In re C.H.*, 2021-Ohio-2809.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF WAYNE | ) | |

IN RE: C.H.
     C.H.

C.A. Nos.    21AP0001
                21AP0002

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF WAYNE, OHIO
CASE Nos.   2018 JUV-C 001061
              2018 JUV-C 001060

DECISION AND JOURNAL ENTRY

Dated: August 16, 2021

CALLAHAN, Judge.

{¶1}     Appellant, C.H. ("Mother"), appeals from a judgment of the Wayne County Court of Common Pleas, Juvenile Division, that terminated her parental rights to her two minor children and placed them in the permanent custody of Wayne County Children Services Board ("CSB"). This Court affirms.

I.

{¶2}     Mother is the biological mother of C.H., born October 3, 2011; and C.H., born April 20, 2013.  Although Mother had four other biological children, they are not parties to this appeal. During the trial court proceedings, the father of C.H. and C.H. ("Father") was struck by a vehicle and died a few weeks later in the hospital.

{¶3}     CSB has a history with Mother dating back to 2008 before the birth of her first child.  The facts of that case were not detailed in this record except that CSB was concerned about

Mother's lack of safe and stable housing, her mental health, and her involvement with violent men. Mother's first child was removed from her custody shortly after birth and Mother's parental rights were ultimately terminated. The record does not indicate whether Mother's parental rights to that child were terminated voluntarily or involuntarily.

{¶4}  In addition to C.H. and C.H., this case initially involved three of Mother's other children. At a hearing during July 2020, however, for reasons that are not clear from the record, Mother agreed to relinquish her parental rights to those children. This Court will confine its review of this case to the facts relevant to C.H. and C.H.

{¶5}  On October 18, 2018, CSB filed complaints, alleging that C.H. and C.H. were neglected and dependent children because the family was homeless; Mother and Father were not meeting the children's basic needs; they were regularly exposing the children to inappropriate adults including multiple registered sex offenders; and both children, then five and eight years old, had exhibited sexualized behavior. On December 5, 2018, C.H. and C.H. were adjudicated dependent children. Two weeks later, both children were placed in the temporary custody of CSB and the proposed case plan was adopted as an order of the court.

{¶6}  The case plan required Mother to complete a psychological and family assessment and follow all reasonable recommendations, including individual counseling and any medication management, if needed; complete a program of parenting classes; obtain and maintain stable housing and income; and visit the children weekly.

{¶7}  During this case, Mother completed parenting classes, visited her children regularly, and secured and maintained stable income and housing. Mother also obtained a psychological assessment with the same psychologist who evaluated her in 2008. The psychologist diagnosed Mother with bipolar disorder; autism spectrum disorder; attention deficit

hyperactivity disorder, combined type; and personality disorder with histrionic, narcissistic, and avoidant traits.

{¶8} The psychologist recommended that Mother see a psychiatrist for medication management and engage in counseling with "a therapist who is skilled in working with individuals with [Mother's] type of personality disorder." The psychologist emphasized that Mother tends to avoid her problems and devotes much time and energy trying to convince others that she has no problems. She further observed that Mother "takes pride in her ability to manipulate others" and that "it is vital that a therapist be made aware of this in order to work effectively with her."

{¶9} Mother did not see a psychiatrist for medication management. She did follow through with individual counseling, but she went to a different agency where she had been receiving counseling with a licensed clinical counselor prior to the psychologist's formal assessment of her. Although Mother admittedly had been receiving social security benefits for more than 20 years for her childhood diagnosis of bipolar disorder, she apparently did not report that history to her counselor. Consequently, Mother's counselor worked with Mother to address only her self-reported symptoms of depression and anxiety, not any of her diagnoses from the formal assessment by the licensed psychologist.

{¶10} Throughout this case, one of CSB's primary concerns about Mother's ability to care for her children was her history of becoming involved with men who either abused her or posed a risk to her children because they were convicted sex offenders whose victims had been children. During this case, Mother continued to be involved with convicted sex offenders and abusive men, one of whom she believed abused one of her children. In response to CSB's concerns, Mother tended to minimize the risk posed by these men and/or lied about having any contact with them.

{¶11} Father was a sex offender who had been convicted of a felony sex offense many years ago. Mother knew about his past when she married him, but she downplayed the significance of Father's prior sex crime because he was a juvenile when he committed the offense. Mother was also aware that Father had become a mentor to other sex offenders after they were released from prison. One of the sex offenders that Father mentored was a man named Dustin, a Tier III registered sex offender. Dustin was adjudicated delinquent for committing one sex offense while he was a juvenile. As an adult, Dustin was convicted in 2008 and 2014 of two separate sex offenses, both of which involved child victims. The facts underlying the 2008 conviction involved Dustin repeatedly victimizing a three-year-old child. Although Mother told CSB that she had no relationship with Dustin after Father died, CSB had received information from several sources that Mother and Dustin had an ongoing relationship.

{¶12} On August 27, 2020, CSB moved for permanent custody of C.H. and C.H. Following a hearing on the motion, the trial court terminated parental rights and placed both children in the permanent custody of CSB. Mother appeals and raises two assignments of error.

II.

**ASSIGNMENT OF ERROR I**

THE TRIAL COURT ERRED AS A MATTER OF LAW AND ABUSED THE DISCRETION OF THE COURT BY MOVING FORWARD WITH THE GRANTING OF PERMANENT CUSTODY OF THESE CHILDREN IN LIGHT OF THE COVID-19 STATE RESTRICTIONS AND THE TOLLING OF TIME BY THE OHIO SUPREME COURT.

{¶13} Mother's first assignment of error is that the trial court erred by failing to grant her motion to continue the permanent custody hearing. Mother filed a written request for a continuance of the permanent custody hearing on October 23, 2020, twelve days before the hearing was scheduled to begin on November 4, 2020, so she complied with the requirement of

Juv.R. 19 and Juv.R. 22(E) that she file a motion for a continuance in writing at least seven days before the scheduled hearing.

{¶14} Loc.R. 5.05(A) of the Court of Common Pleas of Wayne County, Juvenile Division, further provides that "[n]o continuances of any hearing * * * shall be considered unless the movant complies with the following requirements:"

> 1. Motions must be in writing and state the specific reason for the request, the date on which the need arose, and representation that the other attorneys of record, guardian ad litem, and self-represented parties have been contacted along with their positions as to whether they are consenting to the continuance.

> 2. The motion for continuance must be accompanied by a proposed entry. If the motion is for a parentage/custody/visitation/support hearing, the proposed entry must contain a new hearing date previously obtained by the moving party and cleared with opposing counsel.

{¶15} Although Mother filed a written motion for a continuance and referred to health restrictions caused by the COVID-19 pandemic as the reason for her request, she did not indicate whether other counsel and the guardian ad litem had agreed to a continuance. Loc.R. 5.05(A)(1). Moreover, she did not accompany her motion with a proposed entry to reschedule the hearing to another date that had been scheduled with the court and "cleared with opposing counsel." Loc.R. 5.05(A)(2). Because Mother failed to comply with the requirements of the local rule for requesting a continuance of the permanent custody hearing, the trial court was not required to consider her motion. Therefore, the trial court did not err by denying her motion for a continuance. Mother's first assignment of error is overruled.[1]

## ASSIGNMENT OF ERROR II

THE TRIAL COURT ERRED BY GRANTING PERMANENT CUSTODY OF THESE CHILDREN TO [CSB] AS THE MANIFEST WEIGHT OF THE

---

[1] Although Mother also argues that the COVID-19 tolling orders affected the merits of the trial court's permanent custody decision, that argument will be addressed under her second assignment of error.

EVIDENCE PRESENTED CLEARLY AND CONVINCINGLY DEMONSTRATED THE CHILDREN'S BEST INTEREST [IS] BEST SERVED BY THEIR RETURN TO THEIR MOTHER'S CARE.

{¶16} Through her second assignment of error, Mother challenges the weight of the evidence supporting the trial court's permanent custody decision. Before a juvenile court may terminate parental rights and award permanent custody of a child to a proper moving agency, it must find clear and convincing evidence of both prongs of the permanent custody test: (1) that the children are abandoned; orphaned; have been in the temporary custody of the agency for at least 12 months of a consecutive 22-month period; one of these children or another child of the same parent has been adjudicated abused, neglected, or dependent three times; or that the children cannot be placed with either parent, based on an analysis under R.C. 2151.414(E); and (2) that the grant of permanent custody to the agency is in the best interest of the children, based on an analysis under R.C. 2151.414(D)(1). R.C. 2151.414(B)(1) and 2151.414(B)(2); see also *In re William S.*, 75 Ohio St.3d 95, 98-99 (1996). Clear and convincing evidence is that which will "produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." (Internal quotations omitted.) *In re Adoption of Holcomb*, 18 Ohio St.3d 361, 368 (1985), quoting *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus.

{¶17} In considering whether the juvenile court's judgment is against the manifest weight of the evidence, this Court "weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new [hearing] ordered." (Internal quotations and citations omitted.) *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 20. When weighing the evidence, this Court "must always be mindful of the presumption in favor of the finder of fact." *Id*. at ¶ 21.

{¶18}  The trial court found that the first prong of the permanent custody test was satisfied because the children had been in the temporary custody of CSB for at least 12 months of a consecutive 22-month period.  Mother refers to arguments made under her first assignment of error to challenge that finding.  Essentially, she points to evidence that her ability to visit her children and work on reunification services was limited by COVID-19 health restrictions barring in-person visits and services for several months during this case.  Because the health restrictions limited her ability to work toward reunification with her children, she asserts that the trial court should not have found that the "12 of 22" ground was satisfied in this case.

{¶19}  This Court recently rejected the same argument based on similar facts in *In re A.L.*, 9th Dist. Wayne Nos. 20AP0047, 20AP0048, 20AP0049, and 20AP0052, 2021-Ohio-1982, ¶ 16-18.  As in *In re A.L.*, the facts of this case involved a lengthy period of time that the children were in the temporary custody of the agency before the COVID-19 pandemic caused restrictions on in-person case plan services.  The "12 of 22" time period began in this case on December 5, 2018, when C.H. and C.H. were adjudicated dependent, because that was less than 60 days after their removal from the home.  *See In re A.L.*, 2021-Ohio-1982, at ¶ 17, citing R.C. 2151.414(B)(1)(d).  C.H. and C.H. were placed in the temporary custody of CSB two weeks later, and the case plan was adopted at that time.

{¶20}  As in *In re A.L.*, COVID-19 health restrictions were implemented in late March 2020.  *See id.* at ¶ 18.  By that time, C.H. and C.H. had been in the temporary custody of CSB for more than 15 months and Mother had been receiving court-ordered case plan services during that time.  There are no facts in this case to distinguish it from the facts relevant to this issue in *In re A.L.*  Mother has "failed to demonstrate that COVID-19 restrictions prevented [her] from having a meaningful opportunity to work on the case plan for more than 12 months of a consecutive 22-

month period." *Id.* Therefore, she has failed to demonstrate any error in the trial court's "12 of 22" finding.

{¶21} Next, Mother challenges the trial court's finding that permanent custody was in the best interest of C.H. and C.H. When determining the children's best interest, the trial court must consider all relevant factors, including: the interaction and interrelationships of the children, the wishes of the children, their custodial history; their need for permanence in their lives and whether such a placement can be achieved without a grant of permanent custody, and whether any of the factors set forth in R.C. 2151.414(E)(7)-(11) apply to the facts of this case. R.C. 2151.414(D)(1)(a)-(e); *see In re R.G.*, 9th Dist. Summit Nos. 24834 and 24850, 2009-Ohio-6284, ¶ 11.

{¶22} Mother's interaction with her children during this case was limited to supervised visitation because CSB remained concerned about Mother's ability to supervise them alone and protect them from harm. The evidence was not disputed that both children enjoyed their visits with Mother and that there is a parent-child bond between them. Mother visited her children consistently, had actively engaged in parenting classes, and attempted to implement the parenting techniques that she had learned. Although some of CSB's witnesses testified that Mother was not always able to control the children when they misbehaved, the evidence was not disputed that Mother had made significant progress in utilizing appropriate tactics to discipline her children.

{¶23} Although Mother had made significant progress on some of the goals of the case plan, case plan compliance is not determinative of the best interest of the children. *See In re S.S.*, 9th Dist. Summit Nos. 29511 and 29514, 2020-Ohio-1354, ¶ 15. Moreover, there was evidence before the trial court that Mother had not remedied many of her parenting problems. The primary concern of CSB and the trial court was Mother's ability to provide a safe and stable environment

for her children in an unsupervised setting. Mother was involved in counseling but was not addressing any of the specific diagnoses of the psychological expert in this case. Notably, she had not followed the psychologist's explicit recommendations that she see a psychiatrist for medication management and engage in counseling with "a therapist who is skilled in working with individuals with [Mother's] type of personality disorder." Consequently, Mother had not addressed her ongoing problem of exposing her children to dangerous adults.

{¶24} Mother acknowledged at the hearing that Dustin, a Tier III sex offender, could not be around any children. Mother insisted that she had ended all contact with Dustin, but the trial court questioned her credibility, noting that her testimony was contradicted by other evidence presented at the hearing.

{¶25} CSB presented the testimony of several witnesses who had repeatedly seen Mother with Dustin, as recently as a few weeks before the hearing. Two witnesses, who had once stayed with Mother in her apartment while they were homeless, testified that they had seen Mother with Dustin on multiple occasions. One of them testified that he believed that Dustin had been living with Mother because he saw Dustin's belongings scattered all over the apartment. The other testified that Mother told her that she had ended her relationship with Dustin because he beat her, but the witness continued to see Mother with Dustin afterward. Mother also allowed other families with children to stay in her home and have contact with Dustin.

{¶26} Moreover, although Mother had stable housing at the time of the hearing through Wayne Metropolitan Housing Authority, she had repeatedly risked losing that housing by violating specific terms of her lease. CSB presented evidence that Mother had violated her lease on multiple occasions by allowing people who were not on the lease to stay there for more than three consecutive days and by allowing Dustin, a sex offender, to stay there. Although Mother denied

that she had allowed Dustin to stay with her, she admitted that she had allowed other families to stay with her for extended periods of time when they needed a place to stay. Consequently, the trial court reasonably concluded that Mother lacked the stability to provide her children with a safe and stable home.

{¶27} The trial court also considered the wishes of the children. Despite Mother's argument to the contrary, the court did consider that both children had expressed a desire to return home, at least earlier in the case. The trial court further noted that there had been conflicting evidence about the children's current wishes and ultimately concluded that the children seemed to be happy with Mother and in their foster homes. The court also considered the opinion of the guardian ad litem that permanent custody was in the best interest of both children because they felt safe in their current foster placements, and she did not believe that Mother could provide them with a safe home.

{¶28} By the time of the permanent custody hearing, C.H. and C.H. had been in the temporary custody of CSB for nearly two years. During that time, Mother had not demonstrated that she was willing and able to protect her children from inappropriate adults. Prior to coming into agency custody, these children had lived with Mother, where they had been exposed to sexual predators. Mother herself testified that she believed one of these children had been sexually abused by a man named Mark, but Mark had never been prosecuted. Mother accepted no responsibility for the fact that her child had been exposed to that alleged perpetrator or multiple other sex offenders.

{¶29} CSB had investigated several relatives for potential placement but was unable to find anyone who was willing and able to provide these children with a safe and stable permanent

home. Consequently, the court concluded that the children needed a legally secure permanent placement that would be achieved by granting CSB permanent custody.

{¶30} Finally, the trial court found that R.C. 2151.414(E)(11) applied to the facts of this case. R.C. 2151.414(E)(11) is a first prong ground for permanent custody and also a specific factor that should be considered by the trial court when determining the best interest of the children. *See* R.C. 2151.414(E)(11); R.C. 2151.414(D)(1)(e). R.C. 2151.414(E)(11) is satisfied if "[t]he parent has had parental rights involuntarily terminated with respect to a sibling of the child * * * and the parent has failed to provide clear and convincing evidence to prove that, notwithstanding the prior termination, the parent can provide a legally secure permanent placement and adequate care for the health, welfare, and safety of the child."

{¶31} As Mother correctly asserts, there is nothing in the record to demonstrate that her parental rights to any of her other children had been terminated "involuntarily." The evidence at the hearing demonstrated that Mother voluntarily surrendered her parental rights to the three other children who had been parties to this case. The circumstances surrounding the termination of mother's rights to her oldest child were not explained in much detail, so it is unclear whether her parental rights were terminated voluntarily or involuntarily. Consequently, the trial court erred in determining that these facts satisfied the factor set forth in R.C. 2151.414(E)(11).

{¶32} Although the trial court incorrectly found that R.C. 2151.414(E)(11) had been proven, Mother has failed to demonstrate prejudicial error. The trial court did not utilize its incorrect R.C. 2151.414(E)(11) finding to satisfy the first prong of the permanent custody test. Instead, it considered that finding as part of its determination about the best interest of the children. In its 17-page decision, the trial court devoted only a few sentences to its R.C. 2151.414(E)(11)

finding and noted that Mother had "voluntarily surrendered" her parental rights to the three other children who had been parties to this case.

{¶33} Furthermore, Mother has failed to demonstrate that the trial court erred in considering the facts underlying this finding: that Mother had lost custody of four other children. In addition to the statutory best interest factors set forth in R.C. 2151.414(D), the trial court is required to consider "other relevant factors[]" and no one best interest factor is given more weight than any other. *In re Schaefer*, 111 Ohio St.3d 498, 2006-Ohio-5513, ¶ 56.

{¶34} Moreover, under R.C. 2151.414(D)(1), the trial court was required to considerer the interaction and interrelationships of these children with their siblings, so it was relevant that the children have several siblings who are no longer legally part of the family unit. Therefore, although the trial court erred by characterizing these facts as meeting the requirements of R.C. 2151.414(E)(11), Mother has failed to demonstrate that it erred in considering these facts as part of its best interest analysis.

{¶35} Given the evidence before the trial court, it did not lose its way in concluding that the best interest factors weighed in favor of permanent custody to CSB. Mother's second assignment of error is overruled.

### III.

{¶36} Mother's assignments of error are overruled. The judgment of the Wayne County Court of Common Pleas, Juvenile Division, is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Wayne, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

LYNNE S. CALLAHAN
FOR THE COURT

HENSAL, P. J.
TEODOSIO, J.
CONCUR.

APPEARANCES:

MICHELLE FINK, Attorney at Law, for Appellant.

DANIEL R. LUTZ, Prosecuting Attorney, and ANDREA D. UHLER, Assistant Prosecuting Attorney, for Appellee.