DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
 {¶ 1} Appellant, Mark Calloway, M.C.'s father ("Father"), appeals from the decision of the Summit County Juvenile Court. This Court affirms.
 I. {¶ 2} On December 10, 2006, M.C. was sent home from school for misbehaving and hitting and poking other students with paper clips. M.C, who was 8 years old and had been diagnosed with attention deficit hyperactivity disorder ("ADHD"), had not been taking his medication. The principal contacted Father to discuss the situation, and to inform him that he believed M.C. needed to be on medication. Father informed the principal that M.C. needed discipline. *Page 2 
 {¶ 3} On December 12, 2006, the speech therapist at M.C.'s school discovered red marks on his arm. The therapist took M.C. to the principal's office, where M.C. informed the principal that his father had hit him with a belt. The principal contacted Summit County Children Services Board ("CSB"). On December 13, 2006, CSB filed a complaint, alleging M.C. to be a dependent, neglected, and abused child. At that time, the trial court awarded CSB emergency custody of M.C. On January 25, 2007, a magistrate held an adjudicatory hearing. On February 27, 2007, the magistrate found that M.C. was an abused and dependent child. The magistrate dismissed the neglect allegation.
 {¶ 4} On March 8, 2007, Father filed objections to the magistrate's decision. On April 27, 2007, Father filed supplemental objections. On June 5, 2007, the trial court filed an entry overruling Father's objections and finding that M.C. was an abused and dependent child. Father timely appealed, asserting five assignments of error for our review. We have combined some of the assigned errors for ease of review.
 II. ASSIGNMENT OF ERROR I "THE TRIAL COURT ERRED IN FINDING M.C. TO BE AN ABUSED CHILD PURSUANT TO [R.C.] 2151.031(C), AS THE FINDING THAT FATHER ENGAGED IN EXCESSIVE CORPORAL PUNISHMENT AND CREATED A SUBSTANTIAL RISK OF SERIOUS PHYSICAL HARM TO M.C. WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 ASSIGNMENT OF ERROR II *Page 3 "THE TRIAL COURT ERRED IN FINDING M.C. AN ABUSED CHILD PURSUANT TO [R.C.] 2151.031(D) AS THE FINDING THAT M.C. SUFFERED A PHYSICAL INJURY THAT THREATENED HIS HEALTH AND WELFARE WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 5} In his first and second assignments of error, Father contends that the finding that M.C. was an abused child was against the manifest weight of the evidence.
 {¶ 6} The Supreme Court of Ohio has recently reaffirmed that the manifest weight of the evidence standard to be applied in civil cases is that standard which was explained in CE. Morris Co. v. Foley Constr.Co. (1978), 54 Ohio St.2d 279, syllabus. See State v. Wilson,113 Ohio St.3d 382, 2007-Ohio-2202, at ¶ 24. Pursuant to this standard, a reviewing court will presume that the findings of the trier of fact are correct since the trial judge had an opportunity "`to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony.'" Id., quoting Seasons Coal Co., Inc. v. Cleveland (1984),10 Ohio St.3d 77, 80. "`A reviewing court should not reverse a decision simply because it holds a different opinion concerning the credibility of the witnesses and evidence submitted before the trial court. A finding of an error in law is a legitimate ground for reversal, but a difference of opinion on credibility of witnesses and evidence is not.'"Wilson at ¶ 24, quoting Seasons Coal, 10 Ohio St.3d at 81. "Thus, a judgment supported by *Page 4 
`some competent, credible evidence going to all the essential elements of the case' must be affirmed." Wilson at ¶ 26, quoting CE. Morris, 54 Ohio St.3d at syllabus.
 {¶ 7} Accordingly, before this Court will reverse a judgment as being against the manifest weight of the evidence, it must determine whether the judgment of the trier of fact was supported by some competent, credible evidence going to all the essential elements of the case. If the judgment is so supported, then the judgment of the trial court must be affirmed.
 {¶ 8} In the instant case, the juvenile court found M.C. to be an abused child under R.C. 2151.031, which provides in pertinent part:
 "(C) Exhibits evidence of any physical or mental injury or death, inflicted other than by accidental means, or an injury or death which is at variance with the history given of it. Except as provided in division (D) of this section, a child exhibiting evidence of corporal punishment or other physical disciplinary measure by a parent, guardian, custodian, person having custody or control, or person in loco parentis of a child is not an abused child under this division if the measure is not prohibited under section 2919.22 of the Revised Code.
 "(D) Because of the acts of his parents, guardian, or custodian, suffers physical or mental injury that harms or threatens to harm the child's health or welfare."
 {¶ 9} Specifically, under R.C. 2151.031(C), Father argues that this is a case of corporal punishment, and therefore M.C. is not an abused child. Further, Father argues that this corporal punishment did not harm or threaten to harm M.C.'s health or welfare as required for a determination that M.C. was an abused child under R.C. 2151.031(D). We do not agree. *Page 5 
 {¶ 10} Again, our review is limited to determining if the trial court's findings were supported by some competent, credible evidence. In finding that M.C. was an abused child, the magistrate determined that "the evidence is clear that [M.C] did exhibit clear evidence of a physical injury inflicted other than by accidental means. The testimony is clear that [Father] used physical discipline because [M.C] had been suspended from school for poking himself and other[s] with a paper clip." The magistrate then stated that the issue was not whether the physical discipline itself was permitted under the Ohio Revised Code, but rather, under R.C 2919.22(B)(3) whether the discipline "is excessive under the circumstances and creates a substantial risk of serious physical harm to the child." The magistrate stated that the evidence demonstrated that Father struck M.C. with a rolled up belt 10 to 13 times. The magistrate found this to be excessive punishment. Further, the magistrate determined that the evidence was clear that M.C. "did suffer physical injury as a result of the act of the father in striking the child and that injury was harmful to the child's health in this case." As such, the magistrate determined that M.C. was an abused child under R.C. 2151.031(C) and (D). The juvenile court adopted the magistrate's opinion. We agree.
 {¶ 11} At the hearing on January 25, 2007, CSB presented the testimony of Mina Riazi ("Riazi"), Dennis Lombardi ("Lombardi"), Akron Police Officer Andre Moore ("Moore"), Annette Lucarelli ("Lucarelli"), and Nancy Delnay ("Delnay"). Father was unable to attend the hearing and the parties entered into a *Page 6 
stipulation to allow the court to consider his testimony via proffer. Therefore, Father's attorney read Father's proffered testimony into the record.
 {¶ 12} Riazi, a speech language pathologist at M.C.'s school testified that on December 12, 2006, M.C. had a lot of extra energy. She explained that he was "running around the classroom, sliding under his desk, punching the air. You know, just not able to sit down and focus at his desk." She testified that this was abnormal behavior for M.C, but that he had recently been acting out. Riazi stated that because of M.C.'s actions, after lunch, his homeroom teacher requested her help. Riazi further testified that as she was walking with M.C, she moved to put her arm around him. As she attempted to do this, M.C. "pulled away and told me that it hurt." She stated that he seemed to be in pain. When she asked him what was the matter, M.C. informed her that his arm hurt. Riazi testified that M.C. told her that his father had hit him with a belt over 20 times. Riazi explained that M.C.'s arm was "really warm to the touch and it was red and swollen." She then took M.C. to the principal's office.
 {¶ 13} M.C.'s principal, Lombardi, testified that Riazi brought M.C. down to his office. He further testified that M.C. showed him his arm and that it was bruised and red and sore to the touch. Lombardi explained that M.C. told him that Father had hit him with a belt because he was upset with M.C. M.C. stated that Father was upset because Lombardi had called home the previous day about M.C.'s poor behavior. Lombardi indicated that M.C. had not been on medication *Page 7 
that he had been prescribed for his ADHD. Lombardi testified that when he asked M.C. if he was scared, M.C. told him that he was afraid to go home. At this point, Lombardi testified, he contacted CSB. While waiting for CSB, Lombardi contacted Father to inform him that M.C. was in his office, crying and upset. Lombardi testified that he talked with Father regarding M.C.'s medication. Lombardi further testified that Father informed him that he was going to fill the prescription. On cross-examination, Lombardi stated that during the first conversation he had with Father regarding M.C.'s medication, Father indicated that all M.C. needed was to be disciplined. Lombardi explained that M.C. was high strung when he was not on medication, but was much calmer, with only minor behavioral issues when he was on the medication.
 {¶ 14} The magistrate also heard the testimony of Officer Moore. Moore testified that on December 12, 2007, he was called to M.C.'s school. He further testified that M.C. informed him that he had injuries and that his father had caused the injuries with a belt. Moore testified that M.C. had a reddish bruise on his forearm, and that M.C. told him his leg also hurt. Moore stated that M.C. did not seem to be afraid to go home. Moore testified that he spoke with Father. On cross-examination, Moore explained that at first Father was not cooperative with him, but that after he calmed down, he cooperated a bit. Moore further stated that the statements he received from Lombardi, the CSB worker, and M.C. were consistent. *Page 8 
 {¶ 15} The court next heard from Lucarelli, who was the CSB intake worker assigned to M.C.'s case. Lucarelli stated that she spoke with M.C. at his school. She explained that M.C. appeared to be a little apprehensive and scared. At the school, Lucarelli testified that she spoke with M.C. regarding what had happened, what normally happened when he got in trouble, about the last time he had had his medication, and whether he was experiencing any fear about going home. According to Lucarelli, M.C.'s answers to these questions concerned her. She stated that she was concerned because M.C. showed her the bruising on his arm, and indicated that his hip hurt. He informed her that he had been repeatedly hit by a belt and that he was afraid to go home. He further informed her that he had not taken his medication in a long time. Lucarelli then contacted the Akron Police Department. Lucarelli testified that she spoke with Father and he informed her that he had not hit M.C. She further testified that when she asked him how the bruising had occurred, Father indicated that M.C. had done it to himself. Lucarelli stated that M.C. is currently in foster care and is taking medication for ADHD. On cross-examination, Lucarelli explained that she had spoken with Father about M.C.'s medication, and Father informed her that he was getting the medication filled and would bring it to the agency. According to Lucarelli, Father was having a difficult time getting the medication because M.C.'s doctor had retired and was not available. Lucarelli stated that "[t]here seemed to be mixed feelings about medication and [M.C]. What I initially heard was that [Father] was having *Page 9 
trouble dealing with the fact that his son had to be on medication[.]" However, Father did bring M.C.'s medication to the agency.
 {¶ 16} The juvenile court heard the testimony of Delnay, a pediatric nurse practitioner with CSB. She testified that she examined M.C. She explained photographs that CSB had taken of M.C.'s injuries. She explained that the photographs were of contusions, which "would indicate a traumatic injury, deep bruising into the tissue." These contusions, Delnay testified, were located on M.C.'s back, arms and thigh. She further testified that M.C. indicated that the normal form of discipline was a "whooping" with a belt. Delnay testified that this was consistent with the contusions she observed on M.C. She explained that when asked to rate his pain on a scale of one to ten, with ten being the highest pain he had ever felt, M.C. rated his pain at a 20. Further, Delnay explained that M.C. "gave extensive description as far as being hit with the belt and that it was numerous times. He positioned himself — he actually got down and sat in kind of a crouch position and said that's how he positioned himself to protect himself. He described that it happened in the dining room." She testified that the bruises were consistent with his description of crouching to protect himself. Further, M.C.'s medical records were introduced into evidence through Delnay. These records indicate that M.C. informed Delnay that "he had lied about dad." M.C. stated that Father had been hitting M.C. with a belt since kindergarten, and that it happens once in a while. He further stated that Father usually hit him three times, but in *Page 10 
this instance, Father hit him 13 times. On cross-examination, Delnay explained that she did not follow up with M.C. regarding his statement that he had lied about his father. She further testified that M.C. was able to move his arms and legs, walk without limping, and bend, curl and move around.
 {¶ 17} After CSB rested its case, the hearing was continued to February 13, 2006. Father was unable to attend the hearing due to transportation issues, and the parties stipulated to his attorney proffering what his testimony would have been. According to the proffer:
 "Regarding the specific incident that took place on December 12-actually, it would have been December 11th. [Father] would have testified that he received a call from the principal of [M.C.'s] school indicating that [M.C] was poking students. First poking himself with a bent open paper clip and then poking other students with that. And that [Father] needed to come pick his son up from school, that he was going to receive a suspension from school. [Father] would state that he did advise the principal he could not leave his employment at that time for fear of losing his job and that he would take care of it after he got home from school, that he would punish his son appropriately when he got home from school. [Father] would testify, I'm sure if the prosecutor on cross-examination asked him, [Father] was mad about this. He would say that he has raised [M.C] better than that. [M.C] should know that that's not appropriate behavior. So he was upset with [M.C] when he got home[.] * * * In the past, [Father] has disciplined his son by hitting him with a belt and he strikes his son with a belt three times. And he's done that twice prior to this occasion. So this would have been the third time that [Father] has used a belt to discipline his son, and that he strikes him three times with the belt as punishment. On this particular incident, [M.C] was fighting to get away and one of the strikes did hit [M.C] on the arm and did cause what [Father] said was a red mark."
After the proffer, Father rested his case. *Page 11 
 {¶ 18} The juvenile court found that the evidence established that M.C.
 "was abused as he exhibited evidence of physical injury inflicted other than by accidental means and at variance with the history given for it and because the acts of his parent caused him to suffer physical injury that threatened his health and welfare, as he was observed to have a red, swollen, painful bruise on his arm that he indicated he received from his father hitting him with a belt."
 {¶ 19} We find that there is some competent, credible evidence to support the juvenile court's determination that in this instance, hitting M.C. 10-20 times with a rolled up belt was excessive corporal punishment. Further, we find that there is competent, credible evidence to find that by hitting M.C. 10-20 times, this excessive punishment subjected M.C. to a substantial risk of physical harm, as indicated by Delnay's testimony that the contusions indicated "a traumatic injury." Therefore, the exception provided for corporal punishment under R.C. 2915.031(C) does not apply.
 {¶ 20} Finally, we note that the juvenile court correctly found that M.C s injuries were at a "variance with the history given." See R.C. 2915.031(C). The evidence at the hearing showed that Father initially told Lucarelli that he had not hit M.C. and that M.C. caused his own injuries. However, this story conflicts with Father's testimony as proffered by counsel that he did hit M.C. but only three times as punishment for getting in trouble at school. As such, we find that the juvenile court's determination that M.C. was an abused child is supported by some competent, credible evidence. *Page 12 
 {¶ 21} Accordingly, Father's first and second assignments of error are overruled.
ASSIGNMENT OF ERROR III
 "THE TRIAL COURT ERRED IN FINDING M.C. TO BE A DEPENDENT CHILD PURSUANT TO [R.C.] 2151.04(C), AS THE FINDING THAT M.C S CONDITION OR ENVIRONMENT WAS SUCH AS TO WARRANT THE STATE IN ASSUMING GUARDIANSHIP WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 22} In his third assignment of error, Father contends that the trial court erred in finding M.C. to be a dependent child pursuant to R.C. 2151.04(C), as the finding that M.C.'s condition or environment was such as to warrant the State in assuming guardianship was against the manifest weight of the evidence.
 {¶ 23} At the outset, we note that Father's third assignment of error does not present us with an argument that adequately addresses the complexity of the issue. Rather, Father simply states that "as the cause for removal was the discipline of M.C, should said discipline be found to be appropriate within the bounds of the law, the child therefore cannot be found to be dependent, based upon [Father's] legally protected right to restrain his child, and his legal duty to correct and punish bad behavior." (Emphasis sic). Our finding above that the juvenile court's adjudication of M.C. as an abused child was supported by competent, credible evidence satisfies Father's only argument regarding the juvenile court's dependency adjudication. Therefore, Father's third assignment of error is overruled. *Page 13 
 {¶ 24} We note with some concern the juvenile court's adjudication of dependency based upon its finding that Father "failed to ensure that [M.C.'s] necessary medication was available to him." The transcript of the record below reveals some disagreement between Lombardi and Father as to the efficacy of the medication prescribed for M.C. as a means of controlling his behavior. We do not read the trial court's decision as a statement that the only way to treat M.C.'s ADHD was with medication. Our review of the record does not reveal any expert testimony regarding the issue of medication and ADHD. While it is clear that M.C.'s behavior improved when on medication, the juvenile court did not hear any evidence that suggested this was the only method of treatment. Nor do we read the trial court's ruling as suggesting punishment for a parent who chooses an alternative route of treatment. Father, however, has not made this argument. See Cardone v. Cardone (May 6, 1998), 9th Dist. No. 18349, at *8.
 {¶ 25} In the instant case, Father specifically argued that because the abuse adjudication was not supported by the weight of the evidence, the dependency adjudication, which was based on the abuse adjudication, was similarly not supported. We disagree. Accordingly, Father's third assignment of error is overruled.
ASSIGNMENT OF ERROR IV
 "THE TRIAL COURT ABUSED ITS DISCRETION IN FINDING M.C. TO BE AN ABUSED CHILD." *Page 14 
 ASSIGNMENT OF ERROR V
 "THE TRIAL COURT ABUSED ITS DISCRETION IN FINDING M.C. TO BE A DEPENDENT CHILD."
 {¶ 26} In his fourth and fifth assignments of error, Father contends that the trial court abused its discretion in finding M.C. to be an abused and dependent child.
 {¶ 27} Initially, we point out that Father has not cited this Court to any legal authority or to the record to support his argument that the trial court abused it discretion. See App.R. 16(A)(7). As such, we may disregard these arguments. App.R. 12(A)(2).
 {¶ 28} We further note that as we have set out our standard of review as well as the standard of review for the court below, we find Father's fourth and fifth assignments of error regarding the abuse of discretion standard inapplicable. In his fourth assignment of error, Father asserts the same argument with regard to the abuse adjudication that he asserts in his first and second assignments of error. In his fifth assignment of error, he asserts the same argument with regard to the dependency adjudication as he asserts in his third assignment of error. Even if the abuse of discretion standard was applicable, it is axiomatic that if the juvenile court's determinations were not against the manifest weight of the evidence, then that same determination would not be an abuse of discretion. As such, Father's fourth and fifth assignments of error are overruled. III. *Page 15 {¶ 29} Father's assignments of error are overruled. The judgment of the Summit County Juvenile Court is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
 Costs taxed to Appellant. *Page 16 
CARR, P. J., BAIRD, J., CONCUR
(Baird, J., retired, of the Ninth District Court of Appeals, sitting by assignment pursuant to, § 6(C), Article IV, Constitution.) *Page 1