[Cite as *In re C.K.*, 2022-Ohio-3121.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

IN RE: C.K.
    A.W.
    D.V.
    K.E.

C.A. No.     30183

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE Nos.    DN 21 04 0319
                DN 21 04 0320
                DN 21 04 0321
                DN 21 04 0322

DECISION AND JOURNAL ENTRY

Dated: September 7, 2022

HENSAL, Presiding Judge.

{¶1} Appellant, C.E. ("Mother"), appeals from a judgment of the Summit County Court of Common Pleas, Juvenile Division, that adjudicated one of her minor children abused and dependent and her other three children dependent. This Court reverses and remands.

I.

{¶2} Mother is the biological mother of C.K., born April 4, 2008; A.W., born August 9, 2016; D.V., born January 6, 2019; and K.E., born August 3, 2020. The fathers of the children did not appeal from the trial court's judgment.

{¶3} On April 26, 2021, CSB filed complaints, alleging that all four children were neglected and dependent and that A.W. was abused, neglected, and dependent. The allegations were based primarily on an incident from two days earlier, during which Mother had allegedly disciplined A.W. with a belt after the child had started her doll's hair on fire. The next day, while

A.W. was at the home of her grandfather ("Grandfather"), Grandfather contacted the police, who observed bruising on A.W.'s back, arms, and legs. Because the police were concerned about the safety of the other children, they invoked Rule 6 of the Ohio Rules of Juvenile Procedure to take all four children into custody.

{¶4} The matter proceeded to an adjudicatory hearing before a magistrate. The evidence focused almost exclusively on Mother's act of discipling A.W. with a belt and trial counsel's arguments about whether that corporal punishment was so excessive that it constituted abuse under Revised Code Section 2151.031. The evidence about the incident did not include any testimony from Mother or A.W., and Grandfather did not testify about what Mother apparently told him about the incident.

{¶5} Following the hearing, the magistrate decided that A.W. was an abused child and that all four children were dependent under Section 2151.04(C) because of Mother's abuse of A.W. The trial court adopted the adjudicatory decision the same day, pending the filing of timely, written objections. The trial court later adopted the magistrate's dispositional decisions as to each child. Mother did not raise objections to the dispositional orders, nor has she challenged them on appeal.

{¶6} Mother filed timely written objections to the magistrate's adjudicatory decision, which she supplemented after the transcript of the adjudicatory hearing was filed. She asserted that the adjudication of A.W. as an abused child was not supported by the evidence presented at the hearing. Because the dependency adjudications of all four children were based solely on the finding that A.W. was abused under Section 2151.031, Mother asserted that her objections to the magistrate's decision should be sustained, and the complaints as to all four children should be dismissed.

{¶7}     The trial court overruled Mother's objections and adjudicated A.W. an abused child under Sections 2151.031(B), (C), and (D) and adjudicated all four children dependent under Section 2151.04(C) based on its finding that Mother abused A.W.  Mother appeals and raises two assignments of error.

## II.

## ASSIGNMENT OF ERROR I

THE TRIAL COURT'S DECISION FINDING THAT A.W. WAS ABUSED WAS NOT SUPPORTED BY CLEAR AND CONVINCING EVIDENCE.

{¶8}     Mother's first assignment of error is that the trial court's adjudication of A.W. as an abused child was not supported by the evidence presented at the adjudicatory hearing.  The trial court found that A.W. was an abused child under Revised Code Sections 2151.031(B), (C), and (D).  In relevant part, those provisions define an abused child as one who:

(B) Is endangered as defined in section 2919.22 of the Revised Code * * *;

(C) Exhibits evidence of any physical * * * injury * * *.  Except as provided in division (D) of this section, a child exhibiting evidence of corporal punishment or other physical disciplinary measure by a parent * * * is not an abused child under this division if the measure is not prohibited under section 2919.22 of the Revised Code.

(D) Because of the acts of his parents, * * * suffers physical * * * injury that harms or threatens to harm the child's health or welfare.

Of relevance here, Section 2919.22(B)(3) prohibits a person from: [a]dminister[ing] corporal punishment or other physical disciplinary measure or physically restrain[ing] the child in a cruel manner or for a prolonged period, which punishment, discipline, or restraint is excessive under the circumstances and creates a substantial risk of serious physical harm to the child[.]"

{¶9}     The trial court was authorized to adjudicate A.W. an abused child only if it found that clear and convincing evidence demonstrated that Mother abused A.W.  *See* R.C. 2151.35(A)(1) and Juv.R. 29(E)(4).  Clear and convincing evidence is that which will "produce in

the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *In re Adoption of Holcomb*, 18 Ohio St.3d 361, 368 (1985), quoting *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus. Where the proof required must be clear and convincing, this Court will examine the evidence presented at the adjudicatory hearing to determine whether the trial court had sufficient evidence before it to satisfy the requisite degree of proof. *In re J.A.*, 9th Dist. Summit No. 29462, 2020-Ohio-4677, ¶ 25.

{¶10} The sole reason for the trial court's abuse adjudication was the single incident during which Mother disciplined A.W. with a belt because the child had started her doll's hair on fire in her bedroom. Mother asserted in the trial court and again on appeal, however, that CSB failed to present clear and convincing evidence that this single incident of corporal punishment constituted abuse of A.W. This Court agrees.

{¶11} We begin by emphasizing that a parent's use of corporal punishment to discipline her minor child does not necessarily constitute abuse. *See In re K.B.*, 9th Dist. Summit No. 21365, 2003-Ohio-3784, ¶ 14. CSB has asserted on appeal that a parent's use of a belt to discipline a child, in and of itself, constitutes abuse. That argument is not supported by Ohio law. In fact, this Court has stressed that the appearance of a slight injury that resulted from a parent's use of corporal punishment does not necessarily constitute abuse. *Id.* at ¶ 15. To determine whether Mother's punishment of A.W. exceeded the bounds of reasonableness and constituted abuse, the trial court was required to examine the totality of the circumstances surrounding the incident. *Id.* "Specific factors to be considered * * * include the circumstances giving rise to the harm to the child, the past history of the child, the nature and manner of the discipline administered to the child and the measure of discipline." (Internal citation and quotations omitted.) *Id.*

**Extent of Injury**

{¶12} In reviewing the totality of circumstances surrounding an alleged incident of abuse, courts often focus on the extent of the injury. In *In re K.B.*, 2003-Ohio-3784, ¶ 24, an appeal from an adjudication of abuse, this Court agreed with the trial court that the child had not injured himself accidentally and that, even if the child's injuries had been the unintended result of corporal punishment, the punishment was excessive under the totality of the circumstances. This Court's decision was primarily based on extensive medical evidence from a doctor who had examined the child at Akron's Children's Hospital. *Id*. at ¶16-18. The doctor detailed the extent of the child's injuries and explained that they were in unusual places that would not normally have been the result of a two-year-old child accidentally falling, as the mother had claimed. Moreover, he opined that, because of the extent of the child's bruising and other tissue damage, K.B. would have experienced prolonged pain. *Id*.

{¶13} In support of its assertion that discipline with a belt is enough to establish abuse, CSB cites two cases that affirmed an abuse finding on appeal, *In re M.C.*, 9th Dist. Summit No. 23788, 2008-Ohio-116, and *State v. Neal*, 4th Dist. Lawrence Nos. 14CA31 and 14CA32, 2015-Ohio-5452, which do not support the agency's argument. The abuse findings in these cases were affirmed on appeal because extensive evidence about the extent of the child's injuries and other surrounding circumstances demonstrated that the use of corporal punishment in each case was excessive.

{¶14} In *In re M.C.*, 2008-Ohio-116, CSB presented the testimony of several witnesses to explain the child's injury and other circumstances relevant to the father's use of corporal punishment to discipline M.C. The child's language pathologist and school principal testified about speaking to the child about the incident and observing his injuries. *Id*. at ¶ 12-13. Each also

testified that the child's bruises and red marks, which M.C. stated were caused by his father, were sore to the touch. *Id*. A police officer and CSB intake worker also testified in detail about their interviews of M.C. about the incident. *Id*. at ¶ 14-15. Finally, a pediatric nurse practitioner testified about her medical examination of the child. *Id*. at ¶ 16. She described the child's injuries and testified that M.C. informed her that he was in significant pain. *Id*. She also testified that M.C. told her that his father had been using a belt to discipline him for the past several years. *Id*.

{¶15} In *State v. Neal*, 2015-Ohio-5452, there was also significant evidence about the extent of the child's injury and other circumstances surrounding the parents' admitted use of a belt to discipline their six-year-old child. The school nurse examined the child's injuries after the child's teacher expressed concern. *Id*. at ¶ 12. The nurse testified that the child told her that he was in pain, and she observed significant bruising on his back. *Id*. A county sheriff's detective testified about his observation of the child and his interviews of the child and his parents. *Id*. at ¶ 13. The detective testified that the bruises on the child were "probably the worst [bruising on a child] that I've seen in twelve years of law enforcement." *Id*. at ¶13, 46. Finally, the child's pediatrician testified at length about her physical examination of the child. *Id*. at ¶ 14. She described the extensive bruising and welts across the child's torso that were so severe that she ordered chest and rib x-rays to ensure that the child did not have any broken bones. She also ordered urinalysis to check for kidney damage. *Id*. The doctor opined that "a substantial force" was used to inflict the child's injuries. *Id*.

{¶16} Abuse cases often focus on medical testimony about the extent of the child's injuries, or direct evidence that the child suffered from significant pain. In *In re J.L.*, 176 Ohio App.3d 186, 2008-Ohio-1488, ¶ 44 (3d Dist.), the court held that evidence that corporal punishment caused bruising, in and of itself, was not sufficient to establish abuse. In reversing the

trial court's findings of abuse based on excessive corporal punishment, the appellate court emphasized that "notably missing from the record is *any* medical evidence or reports to show that J.L.'s injuries amounted to serious physical harm." (Emphasis in original.) *Id. Compare In re S.L.*, 3d Dist. Logan Nos. 8-17-25, 8-17-26, 8-17-27, 8-17-28, 8-17-29, 8-17-33, 8-17-34, 8-17-35, 8-17-36, and 8-17-37, 2018-Ohio-1111 (affirming the trial court's adjudication of abuse where the court heard extensive medical testimony about the extent of the child's injuries and her prolonged back pain, including testimony that the location of the injuries could have caused damage to the child's kidneys; and the father ultimately admitted that he had struck the child repeatedly with a belt, causing her to complain of back pain for several days).

{¶17} Unlike the cases referenced above, the evidence in this case failed to include any medical or other evidence about the extent of A.W.'s injuries, nor was there any evidence that A.W. suffered pain from the alleged injuries. Although CSB presented testimony that the agency believed that a relative or relatives took A.W. to Akron's Children Hospital to be examined, it did not present any medical records or testimony of a witness with first-hand knowledge about a medical examination of the child.

{¶18} The only evidence about the extent of A.W.'s injures came from two pictures taken by Grandfather and the testimony of one police officer who responded to Grandfather's home and observed bruising on A.W.'s back, legs, and arms. She further testified, however, that A.W. did not appear to be in any pain or discomfort but was "running around playing." The officer attempted to authenticate two pictures that Grandfather had taken of A.W. on his cell phone. The pictures, which were admitted into evidence, are only of the child's back and appear to depict two round red marks and markings that could be bruises, but it is unclear from the quality of the photographs what injuries are shown. The photographs do not clearly and convincingly depict extreme bruising

on the child. Moreover, the police officer did not testify that she was qualified to offer opinions about the severity of the child's injuries, nor did she offer any such testimony.

{¶19} The officer further testified that she had learned about the disciplinary incident and the causes of A.W.'s bruises from Grandfather, who was not present during the disciplinary incident. The officer did not explain what Grandfather told her, nor did Grandfather testify about what Mother told him. The officer testified that she had the opportunity to speak to A.W., who told her that the bruises were the result of Mother hitting her. The officer did not explain, however, what she asked the child or what A.W. specifically told her about the incident or her bruises. The officer testified that she had been a police officer for five years, but she did not testify about whether she had any experience or training in interviewing alleged child victims.

{¶20} A thorough review of the evidence presented at the adjudicatory hearing reveals that there was inadequate evidence presented about the extent of A.W.'s injuries. One police officer testified about seeing bruises on the child, but the source of the bruises and their severity was not established by clear and convincing evidence. Therefore, as to the physical injury aspect of the abuse statute, CSB failed to establish abuse under Section 2151.031(B), (C), or (D).

### Surrounding Circumstances

{¶21} In addition to a lack of evidence about the extent of A.W.'s injuries, CSB failed to present much evidence about other circumstances surrounding Mother's act of using a belt to discipline A.W. As demonstrated through her admissions to some of the witnesses, Mother disciplined A.W. with a belt because A.W. started a fire in the house. Notably, although the trial court's judgment entry and CSB's brief on appeal state that Mother hit A.W. with a belt buckle, there was no evidence at the adjudicatory hearing that Mother hit the child with anything other than the strap of a belt.

**{¶22}** The reason for Mother disciplining A.W. and other surrounding circumstances were directly relevant to whether Mother had disciplined A.W. in an excessive manner. *See In re K.B.*, 2003-Ohio-3784, at ¶ 15. In *In re J.L.*, 2008-Ohio-1488, at ¶ 24, 42, in reversing the trial court's finding of abuse due to a lack of medical testimony, the court also emphasized that the parent had struck her young child with a belt after he ran away from her in the water park at King's Island and had to be located by security. The court emphasized that the mother had used the belt to discipline the child for a dangerous act of misbehavior, not because she was upset or angry. *Id.*

**{¶23}** This Court made a similar observation in *In re A.D.*, 9th Dist. Summit No. 29976, 2022-Ohio-777, ¶ 23, a legal custody appeal that involved allegations that the father had inappropriately disciplined the child by spanking her with a belt after she bit into the cord of live Christmas lights. In examining the circumstances surrounding the incident of discipline, this Court emphasized that the caseworker was not concerned about the isolated incident of physical discipline because the father had not caused injury to the child, and he had a good reason to use discipline on the child.

> Father had not impulsively reacted out of anger but had made a rational decision to discipline the child. A.D. had not harmed herself through an unpreventable accident. She burned herself because she moved her dresser and bit into an electrical cord, and Father explained that he wanted her to learn that she should never play with an electrical cord again.

*Id.*

**{¶24}** In this case, no one disputed that Mother disciplined A.W. for an act of extreme misbehavior that potentially jeopardized her safety, as well as the safety of the entire family, which warranted some manner of discipline. CSB failed to present evidence of the totality of the circumstances surrounding that discipline, however.

{¶25} It is unclear from the evidence whether anyone witnessed the incident of corporal punishment other than Mother and A.W., and neither of them testified about the incident.[1] Moreover, although a few witnesses offered testimony about brief admissions that Mother made about the incident, there were no details offered about interviews of Mother or the child, and none of the witnesses investigated the child's bedroom to determine whether A.W. had, in fact, started a fire in the house.

{¶26} CSB presented the testimony of three witnesses who spoke to Mother about the incident, but their testimony offered few details about the circumstances surrounding the incident. A CSB intake worker spoke to Mother the day after the incident when the police removed the children from Mother's custody. He testified as follows:

> [Mother] admitted to whooping the child's ass because [A.W.] had been messing with a lighter. She felt like—mom felt like she jeopardized the house, the other family members, by playing with a lighter. Felt it warranted discipline.

Although the officer initially testified that he did not recall what kind of discipline Mother used, he later stated on cross-examination that Mother did not deny spanking the child with a belt because Mother was fearful that A.W. might have started the house on fire.

{¶27} Next, a second police officer testified that he went to Mother's home that day and she told him about the incident.

> She said that her daughter was playing with a doll and she got ahold of a lighter and tried to light the baby doll on fire. And she just kind of threw it in the corner and that kind of scared her.

> And obviously because, you know, concerns of her lighting the house on fire. So she got upset and she said she whooped her. That was about it.

---

[1] Although Mother took the witness stand during the hearing, she testified only about paternity of the four children and matters that did not pertain to the corporal punishment incident in question.

According to this officer, Mother did not tell him what she used to "whoop" A.W., nor did she say anything about leaving marks on the child.

{¶28} Finally, CSB presented the testimony of a second CSB intake worker, who spoke to Mother on the phone two days after the incident. This was the only witness to testify that Mother admitted that her discipline left marks on A.W. She testified that Mother admitted that she used a belt to spank A.W. six to seven times because A.W. lit her doll's hair on fire and threw it into the corner. The witness testified that Mother made the following additional admissions:

> She stated she felt that [the discipline] was appropriate because [A.W.] almost burned down the house, which could have caused a lot of issues obviously for the family.

> She said she was concerned because she had had a family friend whose house had caught fire and children had unfortunately passed away. So she was very concerned that [A.W.] had acted in this manner.

> * * *.

> [Mother] had stated that she did feel bad about the marks that she had left on her daughter, but that wasn't her intention.

> But she then, in the next breath, would go on to say she would do it again to save her life.

The trial court asked this witness whether Mother found an actual fire in A.W.'s bedroom. The witness responded that it was not entirely clear, but her understanding was that the child's act of "using the lighter to burn the doll's hair was enough to set off the smoke detectors in the home[.]"

{¶29} Given the lack of medical or other evidence about the actual extent of A.W.'s injuries, and the scant evidence about the circumstances surrounding Mother's use of a belt to discipline A.W. in this case, this Court must conclude that the adjudication of A.W. as an abused child was not supported by clear and convincing evidence. Mother's first assignment of error is sustained.

**ASSIGNMENT OF ERROR II**

THE TRIAL COURT'S DECISION FINDING THAT [THE CHILDREN] WERE DEPENDENT WAS NOT SUPPORTED BY CLEAR AND CONVINCING EVIDENCE.

{¶30} Mother's second assignment of error challenges the adjudications of all four of her children as dependent. The trial court found that the four children were dependent under Revised Code Section 2151.04(C), which defines a dependent child as one "[w]hose condition or environment is such as to warrant the state, in the interests of the child, in assuming the child's guardianship[.]" The trial court found that the children's "condition or environment" warranted state intervention solely based on its finding that Mother had abused A.W. in the home, and the other children resided in that home and were at risk of future excessive corporal punishment by Mother.

{¶31} Because this Court has concluded that the abuse adjudication was not supported by clear and convincing evidence, the dependency adjudications based on that adjudication must also be reversed. Mother's second assignment of error is sustained.

III.

{¶32} Mother's assignments of error are sustained. The judgment of the Summit County Court of Common Pleas, Juvenile Division, is reversed and remanded for proceedings consistent with this opinion.

Judgment reversed
and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellee.

JENNIFER HENSAL
FOR THE COURT

CARR, J.
CALLAHAN, J.
CONCUR.

APPEARANCES:

JAMES K. REED, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and JACQUENETTE S. CORGAN, Assistant Prosecuting Attorney, for Appellee.

ALEXANDRA HULL, Attorney at Law, for Appellee.